# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

———————

No. 96-1552

———————

Porous Media Corporation,       \*
                                                \*

     Plaintiff - Appellee,     \*

                                           \*  Appeal from the United States

     v.                            \*  District Court for the

                                         \*  District of Minnesota.

Pall Corporation,             \*

                                         \*

     Defendant - Appellant.    \*

———————

Submitted: December 9, 1996

Filed: April 8, 1997

———————

Before BOWMAN and LAY, Circuit Judges, and SMITH[1], District Judge.

———————

LAY, Circuit Judge.

Porous Media Corporation (Porous) and Pall Corporation (Pall) are manufacturers of industrial filters. They produce competing products for certain applications in various industries, including the oil and natural gas markets (oil/gas markets) and the paper and power generation markets (paper/power markets).

Porous claims that in 1985 and 1986 it began penetrating the market for filters in the paper/power markets and the oil/gas markets. Porous contends that Pall then began a concerted effort to disparage Porous's products and make false comparisons of Pall's products and Porous's products. Among other things, Porous

———

[1]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri, sitting by designation.

suggests that Pall distributed false anecdotal statements that Porous's filters had collapsed in the field and caused major problems, that Pall made false and disparaging statements about Porous's filters which were not supported by Pall's own testing data, and that Pall made false comparisons of its own filters for certain applications with Porous filters that Porous had never recommended as interchangeable for those applications.[2]

Porous brought this action against Pall for common-law product disparagement and for false misrepresentation under Lanham Act § 43(a), 15 U.S.C. § 1125(a) (1982); Pall counterclaimed for trademark and trade dress infringement and unfair competition. Following a nearly two-month trial, the jury returned a verdict in favor of Porous and against Pall on all of the claims and counterclaims. The jury found that Pall made false statements about Porous's products, that Porous had proven special damages, and awarded Porous $5.5 million on the common-law product disparagement claim. On the Lanham Act claim, the jury found that Pall made false or misleading statements about its own products in its comparative advertising, that Pall had acted willfully and in bad faith, and awarded $1.5 million in damages. In addition, the district court[3] awarded Porous its attorneys' fees in the amount of $560,564 and costs in the amount of $261,712.39.[4]

---

[2]The jury, and the district court sitting as finder of fact for Porous's claim for injunctive relief, found that Pall made numerous false and misleading statements about Porous's products and about its own products. Those findings are not directly challenged in this appeal.

[3]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

[4]The district court also entered an injunction against Pall which was not appealed.

Pall filed post-trial motions for judgment as a matter of law or in the alternative for a new trial. The district court denied the motions, and Pall appeals. Pall challenges the judgment under both the Lanham Act and the common-law disparagement claim. We affirm.

I. LANHAM ACT

The district court allowed Porous to proceed with its claim under the pre-1988 version of the Lanham Act[5] for relief based on false or misleading statements made by Pall about Pall's own products alone and in comparison to Porous's products. The claim encompassed statements made in both the oil/gas and paper/power markets.

Pall argues that the judgment on the Lanham Act claim must be reversed because the district court improperly instructed the jury regarding causation and injury, and because Porous failed to prove an element of the claim by failing to offer extrinsic evidence of customer confusion to show that Pall's statements were misleading. We reject both arguments.

A. Jury instruction

The trial court instructed the jury as to the elements of Porous's Lanham Act claim:

---

[5]The Lanham Act was substantially revised in 1988. Porous's claim for damages under the revised Lanham Act was dismissed by the district court before trial, and this ruling is not appealed. The district court held that the amendments were not retroactive. For a thorough discussion of the relevant amendments to § 43(a) of the Lanham Act and the question of their retroactivity, see ALPO Petfoods, Inc. v. Ralston Purina Co., 913 F.2d 958, 963 n.6 (D.C. Cir. 1990).

To establish its claim that Pall violated the Lanham Act, Porous Media must prove by a preponderance of the evidence the following elements. Those elements are:

Pall made false or misleading statements of fact which misrepresented the nature, characteristics or qualities of Pall's own filter products, alone or in comparison with Porous' products;

Any such false or misleading statements actually deceived or had the tendency to deceive a substantial segment of their audience;

Such statements were material because they were likely to influence buying decisions; and

Pall caused its advertised products to enter interstate commerce; and

Porous has been injured as a result of those activities either by direct diversion of sales to Pall or by a lessening of its goodwill.

To prove its claim under the Lanham Act, any false statements made by Pall must concern Pall's, not Porous Media's, products. Pall need not produce any evidence to show that the statements made are true.

The court then read to the jury Instruction No. 19:

If you should find that Pall made any false or misleading statements in its representations concerning its filter products alone or in comparison to Porous' filter products deliberately—that is with knowledge of their false or misleading nature—and you find that Pall engaged in making any such deliberately false statements as an important part of its marketing efforts, then you may presume that customers and prospective customers were deceived by any such statements and that Porous has suffered damages as a result of such deception.

The effect of this instruction is, of course, to transfer the burden of proof to Pall regarding false deception of Porous's

-4-

customers and the fact of harm Porous incurred by reason of the deception. The court further instructed:

> You are instructed that Pall may overcome the presumption by proof that customers and/or prospective customers were not deceived by any such statements and/or by evidence that Porous has not suffered any damages as a result of any such statements.

In Instruction 20, the district court directed the jury:

> Porous Media has the burden of proving damages by a preponderance of the evidence. Damages, for purposes of this claim, means the amount of money which will reasonably and fairly compensate Porous Media for any injury you find was caused by Pall's misrepresentations of fact concerning Pall's filter products or concerning Pall's filter products as compared to Porous' filter products.
>
> Porous Media may recover any damages which it proves it sustained as a result of Pall's false and misleading representations of fact which misrepresented the nature, characteristics and qualities of filters manufactured by Pall. Porous Media may recover past and future profits lost by Porous Media as a result of lost sales attributable to Pall's wrongful acts.[6]

This instruction also told the jury that "[i]n determining Porous' damages, you should not include any amounts for the purpose of punishing Pall, but you are to fully compensate Porous for the damages, if any, that it has sustained." (our emphasis). Thus, the jury was instructed that upon a finding that Pall had engaged in deliberate deception in its comparative advertising, as a major part of its marketing effort, Porous was entitled to a presumption

---

[6]In this regard, the court further instructed the jury that it could only award Porous damages in the form of lost profits where they were shown to be the natural and probable consequence of Pall's unlawful conduct.

that Pall's statements had caused injury.  However, in order to recover any damages, Porous had the burden of proving both the loss sustained and that it was caused by Pall's statements.  In other words, Porous still had to prove an evidentiary basis, showing actual harm caused by Pall, for any damages award.

Instruction No. 19 contains two separate rebuttable presumptions. The first, which we refer to as a presumption of deception, allowed the jury to assume actual deception, the second element of the cause of action, upon a finding that the defendant acted deliberately to deceive.  The second, which we refer to as a presumption of causation and injury, instructed the jury that upon a finding that the defendant deliberately deceived the public it could assume that the defendant's statements caused harm to the plaintiff, satisfying the fifth element of the cause of action. The presumption of deception, which was not objected to and not appealed herein, has been approved by several courts. See U-Haul Int'l., Inc. v. Jartran, Inc., 793 F.2d 1034, 1041 (9th Cir. 1986) (Jartran II) ("The expenditure by a competitor of substantial funds in an effort to deceive consumers and influence their purchasing decisions justifies the existence of a presumption that consumers are, in fact, being deceived."); Harper House, Inc. v. Thomas Nelson, Inc., 889 F.2d 197, 209 (9th Cir. 1989) (approving the presumption of deception from Jartran II upon a jury's finding that the defendants engaged in intentional deception); Resource Developers, Inc. v. Statue of Liberty-Ellis Island, 926 F.2d 134, 140 (2d Cir. 1991) (approving the use of the presumption of deception once plaintiff establishes that defendant acted with intent to deceive).

At the charging conference, Pall objected to the presumption of causation and injury arguing that it improperly collapses two separate presumptions and that Porous must be required to prove

that any deceptive advertising caused damage to Porous.  Here, Pall argues that the presumption of causation and injury improperly relieved Porous of its burden to prove causation and injury, an essential element of its Lanham Act claim.

Pall relies primarily on the Ninth Circuit opinion in Harper House.  There a producer of personal organizers sued a competitor for copyright infringement and violation of the Lanham Act.  The jury found for Harper House on all claims and awarded substantial damages on both claims. Harper House, 889 F.2d at 201.  Harper House's claim for deceptive advertising under the Lanham Act was that "defendants deceived consumers by showing Time Maker I in its promotion and advertisements and then selling Time Maker II," id. at 208, where "many changes" were made between the advertised Time Maker I and the production version, Time Maker II. Id. at 200.  The court approved the presumption of deception from Jartran II, provided that the jury found that defendants engaged in intentional deception. Id. at 209.  The court noted that the district court had upheld the jury verdict without referring to any actual injury, instead apparently relying on a second presumption from Jartran II, that a plaintiff's damages equal the amount of money spent by defendants on the deceptive advertising. Id.  The court found that Harper House had "presented no evidence of any injury causally related to the defendants' deception," and reversed the judgment on the Lanham Act claim for insufficient evidence of injury.  Id. at 210.  Pall urges that Harper House should govern here.  However, as will be discussed, we find the facts and law of Harper House distinguishable and therefore not controlling.

In the present case, the evidence established that Pall made false or misleading statements involving Pall's product in comparison to Porous's.  For example, one of the documents which Porous urges violates the Lanham Act is a publication by Pall

entitled "Competitive Filter Evaluation For Optimizing Gas Operations: Pall versus Porous Media." Porous submits that this document, which purports to compare the performance of a Pall filter with a Porous filter, includes both false comparisons and false statements about the performance of a Pall filter. Moreover, Porous urges in order to trigger the presumption of deception and the presumption of causation and injury, the jury had to find, and did so find, that Pall made the false or misleading statements deliberately, "that is with knowledge of their false or misleading nature." In fact, here the jury found in its special verdict that Pall's actions were "willful and done in bad faith."

In Harper House, the defendant made false statements about its own product with no reference to another's product. Under the circumstances, the court required specific proof of causation and damage. This is in contrast to a case of comparative advertising where the plaintiff's product is specifically targeted. Judge Goodwin noted the factual difference when he stated that Harper House differed from Jartran II, a comparative advertising case, in that "[Harper House] involves not a deceptive comparison of plaintiff's and defendants' products, but deception regarding defendants' product with little overt reference to plaintiff or plaintiff's product." Harper House, 889 F.2d at 209.

As Judge Goodwin points out, where a defendant is guilty of misrepresenting its own product without targeting any other specific product, it is erroneous to apply a rebuttable presumption of harm in favor of a competitor. Otherwise, a plaintiff might enjoy a windfall from a speculative award of damages by simply being a competitor in the same market. Thus, in cases where there is no comparative advertising involved, the plaintiff must shoulder

the full burden of proof of both cause in fact and injury.[7]  The issue we face in the present case is whether the rule applied by <u>Harper House</u> should govern in a false comparative advertising case.  In other words, the question we must resolve is whether the district court correctly instructed the jury to presume causation and harm from Pall's deceptive comparative advertising.

In applying the presumption of harm in cases where injunctive relief is sought under the Lanham Act, the Second Circuit has specifically contrasted the rules to be applied where false comparative advertising is involved from the rules governing where a defendant simply misrepresents its own product.  In <u>McNeilab, Inc. v. American Home Products Corp.</u>, 848 F.2d 34 (2d Cir. 1988), the defendant advertised that its pain reliever, Advil, was as safe as Tylenol, a pain reliever manufactured by the plaintiff.  The district court had reasoned that where false or misleading advertising is shown, irreparable harm was to be presumed and injunctive relief was granted.  The Second Circuit affirmed, limiting the presumption to cases of comparative advertising.  It stated that "an important distinction must be drawn" between cases applying the general rule, that causation and injury must be proved, and cases of false advertising where the plaintiff-competitor's product is specifically compared or referenced.

The court observed:

> This case, by contrast, presents a false comparative advertising claim.  Thus, the concerns voiced in <u>Coca-Cola</u> and <u>Johnson & Johnson</u> regarding speculative injury do not arise.  A misleading comparison to a specific competing product necessarily diminishes that product's value in the minds of the consumer.  By falsely implying

---

[7]Pall has not cited any other case of comparative advertising which holds the presumption of harm to be error.

that Advil is as safe as Tylenol in all respects, AHP deprived McNeil of a legitimate competitive advantage and reduced consumers' incentive to select Tylenol rather than Advil. This is analogous to a Lanham Act trademark dispute. An infringing mark, by its nature, detracts from the value of the mark with which it is confused. In that context, we recently confirmed that irreparable harm will be presumed. See Home Box Office, Inc. v. Showtime/The Movie Channel Inc., 832 F.2d 1311, 1314 (2d Cir. 1987); Charles of the Ritz Group, 832 F.2d at 1321; Standard & Poor's Corp. v. Commodity Exchange, Inc., 683 F.2d 704, 708 (2d Cir. 1982). Consequently, the district court did not err in presuming harm from a finding of false or misleading advertising.

McNeilab, 848 F.2d at 38; see also Ortho Pharmaceutical Corp. v. Cosprophar, Inc., 32 F.3d 690, 694 (2d Cir. 1994); Castrol, Inc. v. Quaker State Corp., 977 F.2d 57, 62 (2d Cir. 1992); McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co., 938 F.2d 1544, 1549 (2d Cir. 1991).

In Ortho Pharmaceutical, the court emphasized:

While there may be room for such a presumption in cases where there is a question of false designation of goods, our circuit has expressly disfavored presumptions of harm in cases where the products are not obviously in competition or where the defendant's advertisements make no direct reference to any competitor's products. See McNeilab, Inc., 848 F.2d at 38; Coca-Cola Co., 690 F.2d at 316; Johnson & Johnson, 631 F.2d at 190.

Ortho Pharmaceutical Corp. v. Cosprophar, Inc., 32 F.3d 690, 696 (2d Cir. 1994).

We are cognizant, however, that cases involving injunctive relief and those seeking monetary damages under the Lanham Act have different standards of proof. A plaintiff suing to enjoin conduct that violates the Lanham Act need not prove specific damage. In

-10-

contrast, courts require a heightened level of proof of injury in order to recover money damages. See, e.g., Black Hills Jewelry Mfg. v. Gold Rush, Inc., 633 F.2d 746, 753 n.7 (8th Cir. 1980).[8]  In a suit for money damages where a defendant misrepresented its own product but did not specifically target a competing product, plaintiff may be only one of many competitors, and without proof of causation and specific injury each competitor might receive a windfall unrelated to its own damage.  See Harper House, 889 F.2d at 209 n.8.  In addition, we note that the statutory language regarding damages, § 35(a) of the Lanham Act, provides that recovery for violation of the Act "shall constitute compensation and not a penalty."  Lanham Act § 35(a), 15 U.S.C. § 1117(a) (1984).

We find that in comparative advertising cases where money damages are sought and where there exists proof of willful

---

[8]A leading commentator demonstrates the fundamental difference in cases dealing with injunctions and those dealing with money damages:

> Since § 43(a) was passed to protect consumers as well as competitors, the courts are not and should not be reluctant to allow a commercial plaintiff to obtain an injunction even where the likelihood of provable impact on the plaintiff may be subtle and slight. Congressional policy appears to encourage commercial firms to act as the fabled "vicarious avenger" of consumer rights.  An injunction, as opposed to money damages, is no windfall to the commercial plaintiff. An injunction protects both consumers and the commercial plaintiff from continuing acts of false advertising.  Money damages, on the other hand, primarily aid only the competitor, and he is required to satisfy a much higher standard of proof as to injury in order to recover damages.

3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 27.04(3)(d), at 27-48 (3rd ed. 1996) (footnotes omitted).

deception, as here, the reasoning of the injunction cases set forth primarily in the Second Circuit cases is applicable.  What little case law exists supports the district court's use of the presumption of causation and harm to the plaintiff.

In PPX Enterprises v. Audiofidelity Enterprises, Inc., 818 F.2d 266 (2d Cir. 1987), the district court had granted defendant's motion for judgment notwithstanding the verdict on plaintiff's claim for damages under the Lanham Act, reasoning that plaintiff was not entitled to damages because it had failed to present evidence of actual consumer confusion. The Second Circuit reversed, holding that a plaintiff need not provide evidence of actual consumer confusion "in order to prove entitlement to damages."  Id. at 272.  The court reasoned that the plaintiff had provided sufficient evidence to establish its claim, but noted that on remand the plaintiff would "of course, be required to provide 'an evidentiary basis on which to rest'" an award of damages.  Id. at 273 (citation omitted).[9]

The requisite evidentiary basis for an award of damages was described in ALPO.  In ALPO, the D.C. Circuit affirmed the district court's holding that Ralston Purina had violated § 43(a) of the Lanham Act through its false advertising, but vacated the district court's choice of remedies. The court summarized the district court's task on remand:

_____

[9]The court recited this statement of a commentator: "Having established falsity, the plaintiff should be entitled to both injunctive and monetary relief, regardless of the extent of impact on consumer purchasing decisions." Id. at 272-73 (citing Joseph P. Bauer, A Federal Law of Unfair Competition: What Should Be the Reach of Section 43(a) of the Lanham Act?, 31 UCLA L.Rev. 671, 744 n. 277 (1984)).

> When assessing these actual damages, the district court may take into account the difficulty of proving an exact amount of damages from false advertising, as well as the maxim that "the wrongdoer shall bear the risk of the uncertainty which his own wrong has created." Otis Clapp & Son v. Filmore Vitamin Co., 754 F.2d 738, 745 (7th Cir. 1985) (quoting Bigelow v. RKO Radio Pictures, Inc., 327 U.S. 251, 265 (1946)). At the same time, the court must ensure that the record adequately supports all items of damages claimed and establishes a causal link between the damages and the defendant's conduct, lest the award become speculative or violate [Lanham Act] section 35(a)'s prohibition against punishment.

ALPO, 913 F.2d at 969 (citations and footnote omitted).

The court's application of the presumption of causation and injury to the facts of this case, in concert with the damages instructions, was not erroneous. A predicate finding of intentional deception, as a major part of the defendant's marketing efforts, contained in comparative advertising, encompasses sufficient harm to justify a rebuttable presumption of causation and injury in fact. Once it had established its claim, Porous still bore the burden of proving an evidentiary basis to justify any monetary recovery. These instructions, properly reconciled, balanced a recognition of the basic harm to a plaintiff who is targeted by deliberately deceptive comparative advertising with the statutory requirement that any monetary recovery under the Lanham Act must represent compensatory damages shown to have been caused by the defendant. We have no reason to believe that the jury failed to follow instructions in its formulation of the $1.5 million damages award. See Forbes v. Arkansas Educational Television Comm'n, 93 F.3d 497, 501 (8th Cir. 1996), cert. granted, 1997 WL 114947 (March 17, 1997) ("We have great faith in juries, and their desire and ability to follow instructions and make distinctions among the various issues put before them."). In addition, after presiding over the extensive trial, the district

-13-

court rejected Pall's motion for judgment as a matter of law, concluding that "there is sufficient evidence to support the jury's verdict on the Lanham Act claim."

B. <u>Evidence of Customer Perception</u>

Pall argues that it was entitled to judgment as a matter of law on the Lanham Act claim because Porous failed to offer extrinsic evidence of customer perception to prove Pall's statements were misleading. In order to prove that a statement was misleading, "proof that the advertising actually conveyed the implied message and thereby deceived a significant portion of the recipients becomes critical." <u>William H. Morris Co. v. Group W, Inc.</u>, 66 F.3d 255, 258 (9th Cir. 1995) (citations omitted). Pall asserts that in proving Pall's statements about its own products were misleading, Porous utilized improper opinion testimony and failed to provide the necessary market research or customer surveys to show how a significant number of customers perceived Pall's statements. We reject this argument.

First, Pall's conclusory statements that the district court permitted improper opinion testimony are insufficient to establish that the district court abused its discretion in admitting this testimony. Second, the case was tried by Porous primarily, if not exclusively, on the ground that Pall's statements were literally false rather than misleading.[10] Third, the jury instruction,[11] which

_____

[10]The only evidence cited by Pall for the assertion that Porous attempted to prove Pall's statements were misleading is a demonstrative exhibit used during the testimony of Michael Spearman. However, in response to Pall's objection, Porous deleted use of the term "misleading" from the exhibit.

[11] Instruction No. 17 provides in relevant part: "Where, on the other hand, Porous' claim is that the advertising is misleading, Porous must demonstrate, by extrinsic evidence, that the challenged advertisement or statement tends to mislead or confuse customers."

provided liability for both false and misleading statements, required Porous to demonstrate by extrinsic evidence that any allegedly misleading statement was confusing. This properly states the law urged by Pall. Finally, given the facts of this case, Porous need not have been required to present extrinsic evidence of confusion. Because the jury found that Pall violated the Lanham Act willfully and in bad faith, "we see no need to require [Porous] to provide consumer surveys or reaction tests in order to prove entitlement to damages." PPX, 818 F.2d at 272.

II. PRODUCT DISPARAGEMENT CLAIM

The district court properly instructed the jury that in order to prevail on its claim of product disparagement, Porous had to prove that Pall published a false or disparaging statement concerning Porous's products and that special damages resulted from the publication. The product disparagement claim covered statements Pall made about Porous's products, and was limited to statements in the paper/power markets.

Porous's common-law product disparagement claim is governed by Minnesota law. Pall asserts that Porous failed to claim or prove special damages, an essential element of a claim for product disparagement under Minnesota law. Therefore, Pall contends that the district court erred in failing to grant Pall judgment as a matter of law, or in the alternative, a new trial based on the insufficiency of the evidence to support the verdict.

-15-

We review the district court's interpretation of state law de novo. <u>Sondel v. Northwest Airlines, Inc.</u> 56 F.3d 934, 937 (8th Cir. 1995) (citations omitted). We also review the district court's denial of a motion for judgment as a matter of law de novo. <u>Keenan v. Computer Assoc. Int'l, Inc.</u>, 13 F.3d 1266, 1268 (8th Cir. 1994) (citation omitted). In determining whether there exists sufficient evidence to support the jury verdict, we must view the evidence in the light most favorable to the prevailing party, remembering that "[j]udgment as a matter of law is appropriate only when all of the evidence points one way and is susceptible of no reasonable inference sustaining the position of the nonmoving party.'" <u>Id.</u> at 1269 (citation and footnote omitted). The district court's denial of a motion for a new trial under Fed. R. Civ. P. 59 is reviewed for a abuse of discretion. Where the basis of the decision is that the verdict is not against the weight of the evidence, the district court's denial of the motion "is virtually unassailable." <u>Pulla v. Amoco Oil Co.</u>, 72 F.3d 648, 656 (8th Cir. 1995) (citing <u>Keenan</u>, 13 F.3d at 1269).

A.  <u>Damages Theory</u>

Pall argues that Porous's theory of damages to support the product disparagement claim does not satisfy, as a matter of law, the element of special damages. Pall asserts that Minnesota law does not allow use of a lost growth opportunity measure of damages in a product disparagement claim and that therefore it was entitled to judgment as a matter of law.[12]

---

[12]We find merit, as indicated below, in some of Porous's argument that Pall failed to preserve for appeal its challenge to the sufficiency of the evidence supporting the product disparagement verdict. However, this legal question, whether Porous's theory of damages constitutes special damages cognizable in a product disparagement case in Minnesota, was preserved for appeal because it was argued to the district court before the

case was submitted to the jury. See <u>Ruyle v. Continental Oil Co.</u>, 44 F.3d 837, 841 (10th Cir. 1994) ("A party who properly raises an issue of law before the case goes to the jury need not include the issue in a motion for a directed verdict in order to preserve the question on appeal.'") (citing <u>Landes Constr. Co., Inc. v. Royal Bank of Canada</u>, 833 F.2d 1365, 1370 (9th Cir. 1987)); <u>Bottineau Farmers Elevator v. Woodward-Clyde Consultants</u>, 963 F.2d 1064, 1073 (8th Cir. 1992) (holding that legal issue

-16-

Porous's claim for special damages was based on lost growth opportunities and specific lost sales. Porous demonstrated that it initially achieved sales growth in the paper/power markets but that its sales plateaued or declined after the disparagement by Pall. In fact, the paper/power markets were the only markets in which Porous failed to achieve significant growth in sales. Porous introduced marketing reports from Pall which claimed that Pall's sales literature, which included false or misleading information about Porous's products, was helpful in competing against companies like Porous and had resulted in regaining some lost sales for Pall. One of Pall's distributors, Bill Brown, testified that his use of Pall's negative literature regarding Porous was helpful in retaining business. Steven Edwards, a salesman for one of Pall's distributors, testified that his use of Pall's comparative literature influenced customers and that a specific customer had switched back to Pall's products from Porous's after reviewing the negative literature. Porous introduced the "Will-Fit Alert," a memo prepared by an employee of Pall, which Porous argued contained false and deceptive comparisons between Porous's and Pall's filters. The memo states that Pall's comparison to Porous's filters caused Consolidated Paper to abandon Porous and use only Pall's filters. Patrick Spearman, a vice president of Porous in charge of marketing, testified that Porous lost a number of specific customers because of Pall's disparaging statements, and

---

raised in motion for summary judgment did not have to be reasserted in subsequent motions for directed verdict in order to be preserved for appeal).

-17-

that Porous was also unable to approach numerous other potential customers. Spearman and his brother, Michael Spearman, another principal for Porous, were both qualified as experts in the filter industry. They testified that Pall's disparagement was the cause of the harm to Porous and excluded other potential causes for Porous's failure to grow in the paper/power markets. Finally, Porous's expert economist, Dr. Michael Brookshire, testified as to Porous's lost growth opportunity by comparing Porous's sales in the paper/power markets with the geometric average growth rate of Porous's sales in all of its markets, and in the pneumatics and instrumentation markets, which Porous argues are the markets most similar to the paper/power markets.

In <u>Advanced Training Sys. v. Caswell Equip. Co., Inc.</u>, 352 N.W.2d 1 (Minn. 1984), the trial court reversed a jury verdict for the plaintiffs on a product disparagement claim, holding, in relevant part, that the plaintiffs had failed to prove special damages, which are an essential element of the cause of action. <u>Id.</u> at 6. The Minnesota Supreme Court affirmed this ruling, reasoning that

> plaintiff may not recover for product disparagement unless plaintiff is able to prove special damages in the form of pecuniary loss directly attributable to defendant's false statements. Where plaintiff cannot show loss of specific sales, the modern view allows plaintiff to prove a general decline of business, so long as this is shown to be the result of defendant's disparaging statements and other possible causes are eliminated.

<u>Id.</u> at 7-8 (citations omitted). Pall argues that the Minnesota Supreme Court's discussion of special damages in <u>Advanced Training</u> does not support Porous's award for product disparagement. We must disagree.

First, we do not agree that <u>Advanced Training</u> precludes Porous's claim for special damages. In <u>Advanced Training</u>, the plaintiff failed to prove loss of a specific sale or a general decline in business due to the alleged disparagement, and in fact the plaintiff company had captured about ninety-seven percent of the relevant market. <u>Advanced Training</u>, 352 N.W.2d at 8. The Minnesota Supreme Court ruled that the plaintiffs' claim that they would have been more successful earlier but for the disparagement was "too speculative". <u>Id.</u> While recognizing that the element of special damages is an important restriction on the product disparagement cause of action, the logic of <u>Advanced Training</u> does not preclude Porous's damages award. <u>See</u> <u>Prosser & Keeton on Torts</u>, § 128 n.22 (5th ed. 1984 & Supp. 1988) (stating that the holding in <u>Advanced Training</u> that decline in business due to disparagement was sufficient but failure to grow after the disparagement was too speculative "is presumably an assessment of the evidence as to loss, not a rule of law"). Porous presented evidence of specific lost sales and lost growth opportunity, which established pecuniary loss that the jury could reasonably believe was directly attributable to Pall's disparaging statements.

Second, the district court instructed the jury that Porous had to prove special damages in order to establish its product disparagement claim. <u>See</u> Instructions Nos. 25 & 26. In describing what Porous had to prove in order to establish special damages, the jury instructions tracked the relevant language of <u>Advanced Training</u> and described the necessity of proof of special damages in a product disparagement claim. Therefore, the district court applied the proper legal standard based on Minnesota law. Given our holding that Porous's theory of damages was not deficient as a matter of law, the remaining question is whether there is sufficient evidence to sustain the damages award.

B.  <u>Sufficiency of the Evidence</u>[13]


Under <u>Advanced Training</u>, Porous had the burden not only of proving that Pall's statements caused injury, but also of excluding other causes for its loss.  352 N.W.2d at 8.  Pall argues that Porous failed to satisfy this method of proving special damages because the testimony of Porous's principals, the Spearmans, was too speculative to support special damages, and other causes were at least in part responsible for Porous's failure to meet its sales projections.  The district court rejected these arguments, finding that "there is sufficient evidence to support the jury's verdict on the claim of common-law product disparagement." District Court Order at 3.  After reviewing the evidence in the record, viewing it in the light most favorable to the verdict, we agree and affirm the district court's ruling.


First, the testimony of the Spearmans was not too speculative as a matter of law to support the jury's finding of exclusive causation.  Pall argues, citing several antitrust cases, that Porous cannot prove the exclusive cause of its damages through the testimony of its principals.  However, these cases do not present a rule of law that the testimony of a company's principals is too speculative to establish a material fact.  Rather, they focus on the lack of proof specific to each case.  <u>See e.g.</u> <u>Argus Inc. v. Eastman Kodak Co.</u>, 801 F.2d 38, 45 (2d Cir. 1986) (affirming summary judgment for the defendant because plaintiffs failed to present a triable issue of fact on the element of causation);

---

[13]Although Porous urges that Pall has waived its right to challenge the insufficiency of the evidence of the product disparagement claim by failing to renew by post-verdict motion under Federal Rules of Civil Procedure 50(b), we need not address that argument in light of our finding that there was sufficient evidence to sustain the verdict.

Foremost-McKesson, Inc. v. Instrumentation Laboratory, Inc., 527 F.2d 417 (5th Cir. 1976) (affirming directed verdict for defendant because plaintiff failed to present sufficient evidence of causation).  Additionally, as qualified experts in the filter industry, the Spearmans could offer opinions regarding the industry.

Second, Porous presented competent evidence excluding causes other than Pall's disparagement for its lost business.  Pall contends that other factors were responsible at least in part for Porous's losses, citing evidence that three Porous customers stopped buying Porous products for other reasons, that competition increased in the paper/power markets during this time, and that Porous reduced its marketing efforts in the paper/power markets in the spring of 1990.  However, Porous presented evidence that it was successful initially in the paper/power markets, that its sales leveled off or fell after the disparagement by Pall, that the markets in which it was disparaged by Pall were the only markets in which Porous failed to achieve significant growth during this time, and that Porous enjoyed the same competitive advantages in the paper/power markets that led to great success in the other markets.  The Spearmans testified that Pall's disparagement was the exclusive cause of the harm to Porous and specifically excluded other possible factors.  Porous concedes that it reduced its marketing effort in the paper/power markets in 1990, but argues that this was done in order to counteract Pall's attacks in the oil/gas markets and was therefore a way of mitigating its overall losses.

We hold there is sufficient evidence to support the element of special damages.  Accordingly, the district court did not abuse its discretion in denying Pall's motion for a new trial on Porous's common-law claim for disparagement of its product.

III.  JURY MISCONDUCT

    After trial, Pall discovered, through interviews with members of the jury, that jurors had twisted and jumped on Porous's filters during their deliberations.  Pall motioned the district court for relief from the judgment, and a new trial, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, for the alleged juror misconduct.  Attached to the motion was an affidavit[14] from a legal assistant employed by Pall's counsel stating that she had contacted some of the jurors and that they told her that the jurors had stepped and jumped on Porous's filters to determine if they would collapse.  The district court held that the jury's testing of the strength of the filters constituted extraneous evidence, but it denied Pall's motion.  The court held that Pall had failed to establish prejudice from the misconduct, because it failed to prove, "by a preponderance of the evidence, that the outcome of the trial would have been different had the extraneous evidence not been introduced into deliberations."

    We review the district court's decision to deny a motion for a new trial based on alleged juror misconduct for an abuse of discretion. Banghart v. Origoverken, A.B. et al., 49 F.3d 1302, 1305 (8th Cir. 1995) (citations omitted).  In a civil case, the

---

[14]Porous moved, pursuant to Rule 606(b) of the Federal Rules of Evidence, to strike portions of the affidavit that attempted to relate the juror's thoughts during the deliberation process.  The district court granted the motion, striking "those portions of the Flesher affidavit that relate to juror statements regarding the effect the jury experiment had on the verdict."

See also Banghart v. Origoverken, A.B., 49 F.3d 1302, 1306 n.6 (8th Cir. 1995) ("Rule 606(b) establishes very strict requirements for accepting testimony from jurors about their deliberations, and trial courts should be hesitant to accept such testimony without strict compliance with the rule.") (citation omitted).  This ruling is not appealed.

exposure of extraneous evidence to the jury "mandates a new trial only upon a showing that the materials are prejudicial to the unsuccessful party." Id. at 1306 (citing Peterson ex. rel. Peterson v. General Motors Corp., 904 F.2d 436, 440 (8th Cir. 1990) (other citations omitted)).

Pall argues that the district court was correct in finding that the jurors' "experiments" constituted extraneous evidence, but that it abused its discretion in denying a new trial because the alleged misconduct improperly impeached Pall's statements about its own collapse testing of Porous's filters. We disagree. Porous's filters were introduced into evidence, and the jury was allowed to examine them in its deliberations. We think, contrary to the district court's reasoning, that the jury's examination of the filters did not constitute extraneous evidence, but was merely part of the expected process of scrutinizing the evidence as part of its deliberations. See Banghart, 49 F.3d at 1306-07. We find no prejudicial error.

V. ATTORNEY FEES

The district court denied enhanced damages to Porous on the basis that there was no evidence to support such an award under the Lanham Act. This order was not appealed.

However, the court proceeded to award attorneys' fees and costs under § 35(a) of the Lanham Act on the basis that the facts presented constituted an exceptional case.[15] The district court stated:

---

[15]The district court found that the award of attorneys' fees was also warranted under the Minnesota Deceptive Trade Practices Act, Minn. Stat. § 325D.45, subd. 2(2).

-23-

With respect to Plaintiff's Lanham Act claim, the jury found that Defendant acted willfully and in bad faith. This court also finds that the record establishes Defendant intentionally set out to deceive or confuse the public through the publication of false statements about its product alone, and in comparison to Plaintiff's product, and that such conduct was deliberate and willful.

. . .

Plaintiff submitted evidence of Defendant's marketing reports which established Defendant's intent to regain clients from what it called "willfitters." This evidence, together with evidence establishing Defendant published false statements about its own products, cannot be characterized as a simple disregard for Plaintiff's rights.

Our review of the record supports the district court's determination. We hold the district court's findings were not clearly erroneous and an award of attorneys' fees under the Lanham Act was fully justified.

## CONCLUSION

We affirm the verdict on both the product disparagement claim and the Lanham Act claim.

JUDGMENT AFFIRMED.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.