NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0612n.06

**No. 11-2090**

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| INNOVATION VENTURES, LLC, doing business as Living Essentials, | ) ) ) | |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| BHELLIOM ENTERPRISES CORP., | ) ) | |
| Defendant-Appellee. | ) | |

Before:  CLAY and COOK, Circuit Judges; OLIVER, District Judge[*]

COOK, Circuit Judge.  In this dispute between competing energy-drink producers, Innovation Ventures, LLC d/b/a Living Essentials ("LE"), the makers of "5-hour ENERGY," claims that Bhelliom Enterprises Corp. ("Bhelliom") infringed its trademark rights by marketing deceptively similar "8-HR ENERGY" products and falsely advertising their capabilities.  The district court disagreed on both counts, and LE timely appeals the court's grant of summary judgment to Bhelliom. For the following reasons, our intervening decision in a similar case requires REVERSAL on the trademark-infringement claim.  *See Innovation Ventures, LLC v. N.V.E., Inc.* (hereinafter "*NVE*"), 694 F.3d 723 (6th Cir. 2012).  We also AFFIRM IN PART and REVERSE IN PART the district court's judgment on the false-advertising claim.

---

[*]The Honorable Solomon Oliver, Jr., Chief United States District Judge for the Northern District of Ohio, sitting by designation.

- 1 -

I.

In September 2004, LE began to test-market "5-hour ENERGY," a two-ounce "energy shot." The Patent and Trademark Office denied LE's application for trademark registration, citing the descriptive nature of the product's name. The next summer, after market testing proved favorable, LE began marketing "5-hour ENERGY" in a variety of stores nationwide. *See NVE*, 694 F.3d at 727. The product succeeded and soon attracted a number of competitors.

In March of 2006, NVE, a New Jersey-based competitor, introduced a similar energy shot named "6 Hour POWER." LE sued NVE claiming, among other things, trademark infringement (hereinafter the "NVE litigation"). The packaging of the competing products from the NVE litigation appear below.

 

In December 2006, another competitor, Bhelliom, entered the market with an energy-pill product named "Mr. Energy® 8-HR Maximum Strength ENERGY"—a combination of its registered house mark, "Mr. Energy®," and the pills' claimed ability to provide energy for eight hours, the

length of a normal workday. Bhelliom touted its product in press releases and on its website for

using a time-released formula. (R. 53, Exs. 6, 8.) During the summer of 2009, Bhelliom expanded

the "8-HR ENERGY" product line to include energy shots. LE sued Bhelliom for trademark

infringement and false advertising, targeting Bhelliom's representations about the design and

effectiveness of its "8-HR ENERGY" products. Photos of the packaging at bar in this appeal

appear here.




The same district judge presided over LE's suits against both NVE ("6 Hour POWER") and

Bhelliom ("8-HR ENERGY"). The court granted summary judgment to both defendants on the

trademark infringement claims, ruling first in the NVE litigation in September 2010. In doing so,

the district court assessed LE's claims using our traditional trademark-infringement factors:

> (1) the strength of the plaintiff's mark, (2) the relatedness of the goods or services
> offered by the plaintiff and the defendant, (3) the similarity of the marks, (4) any
> evidence of actual confusion, (5) the marketing channels used by the parties, (6) the
> probable degree of purchaser care and sophistication, (7) the defendant's intent in
> selecting its mark, and (8) the likelihood of either party expanding its product line
> using the marks.

No. 11-2090
*Innovation Ventures, LLC v. Bhelliom Enters. Corp.*

*See, e.g.*, *NVE*, 694 F.3d at 731; *Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982). In both cases, the district court found that three factors supported infringement (factors 2, 5, and 6) and four did not (factors 1, 3, 4, and 7), with the eighth factor inapplicable. The court also granted Bhelliom summary judgment on the false-advertising claims, concluding that LE failed to present evidence of damages.[1] LE appealed the adverse judgments in both cases.

The NVE summary judgment appeal reached a panel of this court after the district court granted summary judgment in *Bhelliom*. In its precedential decision, that panel first addressed NVE's argument that LE's "5-hour ENERGY" mark was too descriptive to receive protection under the Lanham Act, 15 U.S.C. § 1125(a), concluding that "5-hour ENERGY" is "suggestive" and thus a protected mark. *NVE*, 694 F.3d at 730. On the merits of the trademark claim, the panel reversed the district court's non-infringement finding and remanded for a trial, explaining that the "evenly balanced" factors—three for, and four against—precluded summary judgment. *Id.* at 732–33. The panel rejected LE's argument that NVE intentionally copied its product, but faulted the district court for discounting LE's evidence of consumer confusion. *Id.* at 732–33 (explaining that the summary judgment standard required the district court to draw all reasonable inferences in favor of LE, the non-moving party).

---

[1] The district court granted summary judgment to LE on Bhelliom's trademark counterclaims related to its "Mr. Energy®" mark. Bhelliom does not appeal that decision.

Noting the similarity of the two cases' trademark claims, LE now argues here that *NVE* requires us not only to reverse the district court's grant of summary judgment, but also to grant summary judgment in its favor. LE also challenges the district court's denial of its false-advertising claims, arguing for a presumption of damages and injunctive relief.

II.

LE's trademark and false-advertising claims arise under the Lanham Act, 15 U.S.C. § 1125(a). Accordingly, the district court exercised federal-question jurisdiction over Living Essentials's trademark claims, 28 U.S.C. § 1331. Our appellate jurisdiction stems from 28 U.S.C. § 1291. We give fresh review to a grant of summary judgment, asking whether the movant showed that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

As relevant here, section 43(a) of the Lanham Act protects trademarks by authorizing civil actions against

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof . . . which—
>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the . . . origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods . . . .

15 U.S.C. § 1125(a)(1). In order to prevail on either of these claims (trademark infringement, false advertising), the plaintiff must show both a protectable trademark and the relevant Lanham Act violation. *NVE*, 694 F.3d at 728.

## III.

### A. Effect of NVE *on LE's Trademark Infringement Claim*

We begin by examining our treatment of LE's similar trademark claim in the NVE appeal. Faced with essentially the same split of trademark factors in *NVE*—three for, four against[2]—we described the factors as "evenly balanced" and thus "counsel[ing] in favor of not granting summary judgment." *Id.* at 733; *see also id.* ("This factually intensive issue is a close call and could, on a fair comparison of the evidence to date, be decided either way."). Considering the similarity of the products, the record evidence, and the district court's rationale, one would expect that our judgment in *NVE* should control here, requiring reversal of the district court's non-infringement judgment.

---

[2]The district court in this case found that factors 4 (actual confusion) and 7 (intentional copying) favored neither party, consistent with our observation that such factors generally do not *favor* or *weigh* against a finding of infringement. *See Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center*, 109 F.3d 275, 286 (6th Cir. 1997) (explaining that a lack of intent does not *favor* an alleged infringer by diminishing likelihood of confusion).

Bhelliom's briefing offers little resistance to *NVE*, suggesting only that it failed to address whether the Lanham Act protected LE's "5-hour ENERGY" product. Yet, as noted above, *NVE* found the mark "suggestive" and thus entitled to trademark protection. *NVE*, 694 F.3d at 730. In our view, little distinguishes this case from *NVE*, and we agree with LE that *NVE* requires reversal of the district court's grant of summary judgment to Bhelliom on this infringement claim.

*B. LE's Arguments for Summary Judgment on Trademark Infringement*

That does not settle the matter, however, because LE now asks for summary judgment in *its* favor. Specifically, it argues that additional factors support its view that Bhelliom's "8-HR ENERGY" pills and energy shots infringed its "5-hour ENERGY" mark. We cannot agree.

It is important to note that LE failed to move for summary judgment before the district court. Although we may, in our discretion pursuant to 28 U.S.C. § 2106, nonetheless direct an alternative order of judgment, such an order is not appropriate in this case. *Trs. of Mich. Laborers' Health Care Fund v. Gibbons*, 209 F.3d 587, 596 n.5 (6th Cir. 2000). In reaching this conclusion we apply "the general rule . . . that a federal appellate court does not consider an issue not passed upon below," *Singleton v. Wulff*, 428 U.S. 106, 120 (1976), and are mindful "[t]his court is not compelled to hear, nor should it hear, an issue not presented to the district court unless reaching that issue serves an over-arching purpose beyond that of arriving at the correct result in an individual case," *Foster v. Barilow*, 6 F.3d 405, 408 (6th Cir. 1993). *See also* 10A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2720 (3d ed. 2004) ("[A]n appellate court should not reverse a

summary judgment and order judgment for the nonmoving party on the basis of an issue that the movant had no opportunity to meet in the district court."). Further, an alternative order of judgment is generally not appropriate when the parties have not had a chance to address any material factual issues before the district court. *See Gibbons*, 209 F.3d at 595; *Fountain v. Filson*, 335 U.S. 681, 683 (1949) (reversing an order of judgment "made on appeal on a new issue as to which the opposite party had no opportunity to present a defense before the trial court"). With these considerations in mind, we decline LE's invitation to consider granting summary judgment in its favor.

LE's argument for summary judgment, like the district court's opinion below, fails to distinguish Bhelliom's energy shots from its pills. One would expect the likelihood-of-confusion analysis to differ somewhat when comparing a *liquid* energy shot to a bottle of energy pills. LE's argument fails to account for these product differences.

Finally, were we to take up this forfeited argument, the additional factors relied on by LE do not compel a finding of trademark infringement. LE now urges this court to consider the supporting factors found by the district court, plus factors 1 (mark strength) and 3 (mark similarity) as supporting a finding of infringement. It concedes that factors 4 (actual confusion) and 7 (intentional copying) present a jury question.

To prevail on its claim, LE must show that Bhelliom's "8-HR ENERGY" mark creates a likelihood of confusion regarding the origin of the parties' competing products. 15 U.S.C.

§ 1125(a)(1)(A); *NVE*, 694 F.3d at 731.  As noted above, we consider the following factors as bearing on whether a plaintiff has shown a likelihood of confusion:

> (1) the strength of the plaintiff's mark, (2) the relatedness of the goods or services offered by the plaintiff and the defendant, (3) the similarity of the marks, (4) any evidence of actual confusion, (5) the marketing channels used by the parties, (6) the probable degree of purchaser care and sophistication, (7) the defendant's intent in selecting its mark, and (8) the likelihood of either party expanding its product line using the marks.

*NVE*, 694 F.3d at 731.  "Whether a likelihood of confusion exists 'is a mixed question of fact and law,' but the ultimate determination of 'whether a given set of foundational facts establishes a likelihood of confusion is a legal conclusion.'" *Id.* (quoting *Therma–Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 630–31 (6th Cir. 2002)).  Though we typically resolve trademark claims as a matter of law, we recognize that certain cases present factual disputes or such evenly balanced factors that the matter is properly resolved by the finder of fact.  *See, e.g.*, *NVE*, 694 F.3d at 733 (reversing summary judgment in favor of defendant, finding factors in relative equipoise); *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 284 (6th Cir. 1997) (same, finding a genuine issue of fact regarding the product similarity).

This case, like *NVE*, "is a close call and could, on a fair comparison of the evidence to date, be decided either way."  694 F.3d at 733.  LE acknowledges that certain factors present genuine issues of material fact.  Further, Bhelliom's pill and energy-shot versions of "8-HR ENERGY"

warrant separate consideration. As in *NVE*, we reverse the district court's grant of summary

judgment and leave the remaining factual disputes for the factfinder.

IV.

LE's false-advertising claim targets two representations Bhelliom made in press releases and

on its website about its "Mr. Energy® 8-HR Maximum Strength ENERGY" products: (1) that the

products use a time-released formula, consistent with a Harvard University study that revealed higher

sustained energy levels from the consumption of low doses of energy-boosting substances throughout

the day; and (2) that the products provide eight hours of energy. To present a viable false-advertising

claim under the Lanham Act, LE needs to show:

> 1) the defendant has made false or misleading statements of fact concerning his own
> product or another's; 2) the statement actually or tends to deceive a substantial
> portion of the intended audience; 3) the statement is material in that it will likely
> influence the deceived consumer's purchasing decisions; 4) the advertisements
> were introduced into interstate commerce; and 5) there is some causal link
> between the challenged statements and harm to the plaintiff.

*Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*,

185 F.3d 606, 613 (6th Cir.1999).

The district court granted summary judgment to Bhelliom because LE failed to present

evidence of the last element: that the alleged falsities harmed LE. Though LE does not dispute this

fact,[3] it asserts that the absence of damages does not preclude their claim for two reasons: (1) Bhelliom's willful misrepresentations about its competitor products warrant a presumption of damages, and (2) injunctive relief does not require damages. Only the second argument has merit, but it warrants remand, not summary judgment.

## A. Presumption of Damages for Willful Misrepresentations About Competitor Products

LE correctly notes that, for purposes of comparative advertising, we have recognized a limited exception to the general rule that a false-advertising plaintiff must prove damages. In *Balance Dynamics Corp. v. Schmitt Industries, Inc.*, we adopted the reasoning of an Eighth Circuit case that presumed damages in instances of willful deception. 204 F.3d 683, 694–95 (6th Cir. 2000) (quoting *Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329, 1336 (8th Cir.1997)). We stressed, however, that the presumption "extend[s] only to cases of comparative advertising where the plaintiff's product was specifically targeted," explaining that "[o]therwise . . . 'a plaintiff might enjoy a windfall from a speculative award of damages by simply being a competitor in the same market.'" *Id.* at 694 (quoting *Porous Media*, 110 F.3d at 1334–35). Recognizing this boundary, we found the presumption overcome by evidence of no marketplace injury. *Id.* at 695.

---

[3]For the first time in its reply brief, LE appears to rely on expert testimony speculating that Bhelliom's sales "no doubt were drawn from consumers who might have purchased 5-Hour Energy." (Appellant Reply Br. at 20.) The opening brief acknowledged that the district court rejected this argument, but makes no attempt to use this evidence to support false-advertising damages. (*See* Appellant Br. at 16, 20.) Because LE omitted this known argument from its opening brief, we deem it forfeited. *See, e.g.*, *United States v. Madden*, 403 F.3d 347, 351 n.1 (6th Cir. 2005).

LE devotes considerable argument to the falsity of Bhelliom's advertisements—an issue not reached by the district court—but gives scant attention to the willfulness and targeted nature of these alleged misrepresentations. For willfulness, LE offers only the testimony of an employee at Garden State Nutritionals, the company that manufactured Bhelliom's "8-HR ENERGY" products, claiming that Bhelliom *knew* its products lacked a time-released formula. (Appellant Br. at 61 (citing R. 53, Ex. 4 at 25, 28–29).) This evidence relates to statements appearing in a specific press release and on Bhelliom's "8-HR ENERGY" website, http://www.8-hr.com, in which Bhelliom asserts that its products use a time-released formula, similar to that recommended by a Harvard study (hereinafter "time-released-formula ads"). (Appellant Br. at 11–12, 58–59; R. 53, Exs. 6 (linking product to Harvard study), 7 (crediting "the revelations of [a] government study" for inspiring the "design[] [of] a supplement that slowly releases its energy-boosting ingredients in small increments throughout the day" ), 8 (proclaiming "time-released formula").) Nevertheless, LE suggests that another advertisement qualifies for the presumption of damages—an ad depicting the comparative effectiveness of Bhelliom's products *vis-à-vis* other energy shots (R. 53, Ex. 6)—without showing that Bhelliom made a willful misrepresentation in that ad. Absent a showing of willfulness for that ad, we confine our review for this aspect of LE's false-advertising claim to the time-released-formula ads.

On that front, LE presents colorable evidence that Bhelliom knowingly misstated its products' time-release capabilities, a point that Bhelliom does not dispute. But the presence of willfulness, alone, does not warrant a presumption of damages; the alleged misrepresentation must

target the plaintiff's product. The Eighth Circuit explained this limitation in *Porous Media*: "In a suit for money damages where a defendant misrepresented its own product but did not specifically target a competing product, plaintiff may be only one of many competitors, and without proof of causation and specific injury each competitor might receive a windfall unrelated to its own damage." 110 F.3d at 1335–36; *see also Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 209–10 (9th Cir. 1989) (rejecting a presumption of damages where the defendants deceptively advertised their product, a binder-organizer, but plaintiff "presented no evidence of any injury causally related to the defendants' deception"). The Lanham Act's general instruction that damages "shall constitute compensation and not a penalty," 15 U.S.C. § 1117(a), likewise supports this view. *Porous Media*, 110 F.3d at 1336; *see also* 5 McCarthy on Trademarks and Unfair Competition § 27:31 (4th ed.), *available at* Westlaw MCCARTHY ("Since § 43(a) [of the Lanham Act] was passed to protect consumers as well as competitors, the courts are not and should not be reluctant to allow a commercial plaintiff to obtain an injunction even where the likelihood of provable impact on the plaintiff may be subtle and slight. Congressional policy appears to encourage commercial firms to act as the fabled 'vicarious avenger' of consumer rights. . . . An injunction, as opposed to money damages, is no windfall to the commercial plaintiff. An injunction protects both consumers and the commercial plaintiff from continuing acts of false advertising. Money damages, on the other hand, primarily aid only the competitor, and he is required to satisfy a much higher standard of proof as to injury in order to recover damages." (footnotes omitted)).

*Porous Media*, which allowed a presumption of damages, involved claims that the defendant made misrepresentations about the *plaintiff*'s product. *Id.* at 1331 & n.2. So did *Balance Dynamics Corps*, 204 F.3d at 686–87 (detailing the defendant's consumer-alert letter suggesting that the plaintiff's product was subject to environmental regulations and eventually would be banned, with consumers absorbing the costs of regulatory compliance), 694–95 (finding that the defendant's letter "specifically targeted [plaintiff's product], which was the only product of its kind on the market"). LE makes no such claim here. At best, it notes that one of the time-released-formula ads acknowledges its "5-hour ENERGY" product as a competitor. (Appellant Br. at 61 (citing R. 53).) Sure enough, that ad acknowledges "5-hour ENERGY" and another (coincidentally, "6 Hour POWER") as competitors in the energy supplement market, but it does not misrepresent their formulas or effectiveness. Rather, the press-release states that the competitors proclaim energy boosts that match their products' respective five- and six-hour names and calls the competitors "successful." Indeed, the press release offers only one direct point of comparison between "8-HR ENERGY" and the competition: whereas "the taste of the drink and the inconvenience of the packaging make [energy shots] a less than ideal choice for many individuals," Bhelliom's "easy-to-swallow capsule avoids the harsh taste of energy drinks." (*Id.*)[4]

---

[4]Ironically, Bhelliom introduced its own energy shot less than three years after offering its product in pill form, despite its initial concerns about the energy drink medium. The packaging for "8-HR ENERGY" products claims they are "#1 in Taste."

LE does not object to these generic statements of a better-tasting, more convenient product, nor could it. *See, e.g.*, *Interactive Prods. Corp. v. a2z Mobile Office Solutions, Inc.*, 326 F.3d 687, 699–700 (6th Cir. 2003) (explaining that vague, opinion-based claims about a product constitute non-actionable "puffery" under the Lanham Act). LE also does not seek damage-control costs arising from this ad. *See Balance Dynamics Corp.*, 204 F.3d at 692–93. Thus, at bottom, LE objects to the fact that Bhelliom oversold its own product, not that Bhelliom misrepresented or caused confusion regarding LE's product. From our review of the presumed-damages cases, LE needed to show that Bhelliom's willful misrepresentations targeted its products; it did not. We affirm the district court's denial of damages for the false-advertising claim.

## B. Injunctive Relief

To the extent that LE seeks injunctive relief, however, it stands on firmer ground. The district court stated its position on this issue in two brief sentences, finding this option likewise foreclosed by LE's failure to show harm. (R. 86, Op. & Order at 13 (explaining that, despite a lower standard of proof for injunctive relief, LE still failed to "demonstrate a likelihood that [Bhelliom's] advertising has caused or will cause harm to [LE]").) Our cases do not require distinct evidence of harm as a prerequisite for injunctive relief. *See, e.g.*, *LidoChem, Inc. v. Stoller Enters., Inc.*, 500 F. App'x 373, 380 (6th Cir. 2012); *Balance Dynamics Corp.*, 204 F.3d at 693–94; *Am. Council*, 185 F.3d at 618. Indeed, in *American Council*, we held that

> injunctive relief may be obtained by showing only that the defendant's representations about its product have a tendency to deceive consumers while recovery of damages requires proof of actual consumer deception. This lower standard [for injunctive relief] has arisen because when an injunction is sought, courts may protect the consumer without fear of bestowing an undeserved windfall on the plaintiff. Although plaintiff need not present consumer surveys or testimony demonstrating actual deception, it must present evidence of some sort demonstrating that consumers were misled.

185 F.3d at 618 (internal quotation marks and citations omitted). Precedent therefore requires us to reverse the district court's contrary judgment.

The questions remain whether, and to what degree, the district court should have granted the injunctive relief sought by LE. To repeat, LE challenges two primary representations appearing in Bhelliom's ads: (1) that "8-HR ENERGY" products use a time-released-formula , and (2) that they provide energy for eight hours. The latter claim has many manifestations, ranging from the name of the product to ads guaranteeing eight hours of energy and a rudimentary bar graph depicting energy drinks' comparative effectiveness. (*See* R. 53, Exs. 7, 9.) LE argues that all of these representations were literally false. Bhelliom only defends the eight-hour-energy representations, citing product testimonials and scientific evidence concerning the effectiveness of caffeine, one of the primary ingredients in its products. LE improperly suggests that we should construe facts in its favor in determining falsity, despite the fact that it now asks for summary judgment. Even so, it does not address the key factor identified in *American Council*: the misrepresentation's tendency to deceive consumers. *Am. Council*, 185 F.3d at 618.

We may overlook that factor with regard to the time-released-formula ads because *American Council* recognized a legal presumption of consumer deception for a competitor's literally false advertisements. 185 F.3d at 614; *see also LidoChem, Inc.*, 500 F. App'x at 380. During oral argument, Bhelliom conceded these false statements, but noted that the statements only concerned their "8-HR ENERGY" pills. They also assure us they have discontinued these ads. That may be so, but this development does not appear in the record. To the extent these false advertisements remain at issue, we remand for the district court to fashion appropriate injunctive relief.

But we cannot presume deception with regard to the myriad eight-hour-energy claims, the falsity of which Bhelliom genuinely disputes. In the absence of a literally false statement, *American Council* instructs that a plaintiff may obtain injunctive relief if the misleading representation "tend[s] to deceive a substantial portion of the intended audience." 185 F.3d at 618. "Although plaintiff need not present consumer surveys or testimony demonstrating actual deception, it must present evidence of some sort demonstrating that consumers were misled." *Id.*

Because the district court did not consider these factors in resolving LE's false-advertising claims, we think it prudent to allow the district court, in the first instance, to resolve whether any of Bhelliom's advertisements proclaiming eight hours of energy contained literal falsities or misleading representations, and which (if any) tend to deceive a substantial portion of the intended audience.

V.

For the above reasons, we REVERSE the district court's judgment on the trademark-infringement claim. We also AFFIRM IN PART and REVERSE IN PART the district court's judgment on the false-advertising claim, AFFIRMING the denial of damages and REVERSING the denial of injunctive relief with instructions. We REMAND for further proceedings consistent with this opinion.