1302

David L. BANGHART, Appellant/Cross–
Appellee,

v.

ORIGOVERKEN, A.B., a Swedish Corpo-
ration; Origo U.S.A., Inc., a Florida Cor-
poration; Electrolux, A.B., a Swedish
Corporation; The Dometic Corporation,
an Indiana Corporation; White Consoli-
dated Industries, a Delaware Corpora-
tion; Origo Engineering, A.B., a Swed-
ish Corporation; Origo Division Domet-
ic Corp.; Hunter Marine Corporation, a
New Jersey Corporation, Appellees/Cross
Appellants.

Nos. 93–3663, 93–3805.

United States Court of Appeals,
Eighth Circuit.

Submitted October 14, 1994.

Decided March 3, 1995.

Peter H. Grills, St. Paul, MN, argued (Peter H. Grills and Brian F. Kidwell, on the brief), for appellant/cross-appellee.

Lawrence J. Skoglund, Minneapolis, MN, argued (Lawrence J. Skoglund, Diana L. Brennan and Lauri A. Vranyes, on the brief), for appellees/cross-appellants.

Before HANSEN, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

JOHN R. GIBSON, Senior Circuit Judge.

David L. Banghart appeals from the district court's [1] denial of his motion for a new trial following an adverse jury verdict in his product liability action. Banghart received serious burns when an alcohol stove on his sailboat exploded into flames. He sued Origo, the manufacturer of the stove; Hunter Marine Corporation, the manufacturer of the boat and seller of the stove; and others affiliated with the two. The only issues before us are whether the district court erred in admitting two enlarged photographs taken sometime after the fire, and whether the jury improperly conducted experiments with the stove during deliberations. We affirm the judgment of the district court.

Banghart received serious injuries as a result of a fire which occurred while he was refueling the Origo 6000 alcohol stove on his sailboat. The origin of the fire, and whether Banghart removed the fuel canister from the stove to the sink in order to refuel it, were factual issues around which there was considerable conflicting testimony and dispute.

During the trial, Origo introduced two enlarged photographs into evidence, Exhibits 16 and 19, over Banghart's objections. Banghart objected on the grounds that defense counsel had not included the photographs in his exhibit list and had failed to lay the proper foundation for the admission of the photos. The exhibits were enlargements of photographs of the stove taken after the accident by one of three persons: two investigators or a passenger on the boat when the fire occurred. Origo used both photographs in questioning Banghart's expert witness, Dr. John Hoffman, and its expert witnesses, Bengt Ebbeson, and Dr. Fred Quest.

During the trial, Banghart's expert, Dr. Hoffman, testified concerning the Origo 6000 stove, and described certain tests he had performed with the stove. He stated that the tests indicated that it was possible for a wooden match dropped into the stove to remain lit either inside the stove or behind the stove while the stove was open for refueling. He expressed his opinion that the explosion may have been caused by alcohol fumes igniting as a result of a match dropped in this manner continuing to burn. Origo's expert, Dr. Quest, disputed Dr. Hoffman's dropped match theory. For the purposes of addressing the limited issues on appeal, it is unnecessary to develop the factual intricacies of the eight-day trial in greater detail.

The jury determined that the Origo 6000 stove was not defective in design, but lacked

1. The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

adequate warnings and that Banghart's negligence, not the inadequate warnings, was the direct cause of his injuries. It further found that the sailboat had adequate warnings.

After the jury verdict, Banghart's counsel's paralegal conducted telephone interviews with each of the jurors. The paralegal then filed an affidavit which stated that three of the jurors had informed her that the jury used toothpicks and matches to conduct experiments to determine whether matches could be dropped into the stove as testified to by Dr. Hoffman.

## I.

Banghart argues that the district court erred in admitting the two enlarged photographs because of Origo's failure to list the exhibits as required by the Rules of Procedure of the United States District Court for the District of Minnesota[2] and Origo's failure to lay the proper foundation for the admission of the photographs. Additionally, Banghart contends that the admission of the photographs and the resulting testimony regarding the photographs were extremely prejudicial and are grounds for a new trial.

■ We review a district court's ruling on the admissibility of evidence under an abuse of discretion standard. *Hogan v. American Tel. & Tel. Co.*, 812 F.2d 409, 410 (8th Cir. 1987) (per curiam); *Smith v. Firestone Tire & Rubber Co.*, 755 F.2d 129, 134 (8th Cir. 1985). "Even with a clear showing of abuse, the error must have affected the substantial rights of the parties to warrant reversal of the district court." *Hogan*, 812 F.2d at 411. Here, the district court did not abuse its discretion.

■ The record makes clear that all of the photographs of the stove, including the two that were enlarged and introduced at trial, were originally in the hands of Banghart's counsel, and that Banghart's counsel

furnished copies to Origo's counsel. Indeed, Dr. Hoffman testified that he had examined at least one of the photos before trial. Furthermore, before trial, Origo attempted to notify Banghart that the photographs had been inadvertently left off of the exhibit list, but failed due to a miscommunication. It was not an abuse of discretion for the district court to conclude that Origo's failure to comply with the local rule did not result in substantial prejudice so as to render the photographs inadmissible. It is the district court's responsibility to enforce its rules, and absent unusual circumstances not now before us, the district court's failure to do so does not furnish us with a basis for concluding that the district court abused its discretion. *See Phil Crowley Steel Corp. v. Macomber, Inc.*, 601 F.2d 342, 344 (8th Cir.1979) (district courts are accorded broad discretion in determining the scope of discovery and enforcing discovery rules).

■ Next, Banghart argues that the photographs should not have been admitted because of Origo's failure to establish the proper foundation. Banghart contends that Origo's foundation was insufficient because Origo failed to establish when or by whom the photographs were taken.

901(a) of the Federal Rules of Evidence provides that "authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed.R.Evid. 901(a). "To meet this standard, the proponent need only demonstrate a rational basis for its claim that the evidence is what the proponent asserts it to be." *U.S. v. Coohey*, 11 F.3d 97, 99 (8th Cir.1993) (citation omitted).

Origo's only claims with respect to the photographs were that they depicted the fuel canisters in the stove and that they were taken at sometime after the accident.[3] The

2. Local Rule 39.1 of the Local Rules of the United States District Court for the District of Minnesota provides that:

> A list of exhibits shall be prepared on a form to be obtained from the Clerk of the Court.... These exhibits shall be made available for examination and copying at least 14 days prior to

the date the first case on the civil calendar may be called for trial.
D.Minn. LR39.1(b)(1)(B) (1994).

3. Indeed, the district court instructed the jury: Members of the jury, you have heard testimony about Exhibits 19 and 16. And those are the ones that are displayed up here by the witness

record indicates that the photographs originated from one of three sources: 1) Jason Krueger, a passenger on the boat who took photographs immediately after the accident; 2) Jerry Shurb, an investigator for the property insurer who took photographs one month after the accident; or 3) Banghart's investigator, who took photographs 6 months after the accident.[4] Furthermore, Banghart stipulated that the photographs depicted the fuel canisters in the stove in question. Thus, Origo provided a rational basis for the jury to conclude that the photographs were what Origo asserted they were. In fact, the arguments asserted by Banghart's counsel in this respect approach the frivolous.

 Finally, Banghart contends that the admission of the testimony elicited from Origo's experts concerning the photographs constituted undisclosed expert testimony and was unduly prejudicial. Although Origo did not disclose the fact that its experts would testify regarding the photographs, Origo disclosed the substance of its experts' testimony in its answers to Banghart's interrogatories. Thus, the testimony of Origo's experts was only undisclosed to the extent that it related to the photographs.

Banghart argues, in his reply brief[5], that *Voegeli v. Lewis,* 568 F.2d 89 (8th Cir.1977), requires reversal for Origo's failure to disclose the substance of expert testimony in interrogatory answers. However, Origo's interrogatory answers revealed that their experts would testify that the fire was above the stove and not the sink, that both fuel canisters were in the stove at the time of the accident, and other details which were inconsistent with Banghart's theory. Conversely, In *Voegeli,* defense counsel had completely failed to list an expert witness, outline expert

testimony, and properly answer interrogatories regarding expert testimony after motions to compel discovery had been granted. *Voegeli,* 568 F.2d at 95–97. In *Voegeli,* the discovery of expert opinion had "degenerate[d] into a game of evasion." *Id.* at 97. That has not occurred here.

Having concluded that the district court did not abuse its discretion in admitting the photographs, we see no basis for concluding that the court abused its discretion in admitting testimony relating to the photographs. The reasoning which supported the court's conclusion that Banghart was not unduly prejudiced by Origo's failure to list the photographs on its exhibit list, applies with equal force to the court's conclusion that Banghart would not be unduly prejudiced by the admission of testimony regarding the photographs.

## II.

 Next, Banghart argues that the district court erred in concluding that experiments conducted by the jurors during deliberations did not amount to juror misconduct, and in denying his motion for new trial on the basis of the alleged misconduct. Unless there has been an abuse of discretion by the trial court, we will not set aside the court's decision to deny a motion for new trial based on allegations of juror misconduct. *Olson Motor Co. v. General Motors Corp.,* 703 F.2d 284, 289 (8th Cir.), *cert. denied,* 464 U.S. 894, 104 S.Ct. 240, 78 L.Ed.2d 231 (1983) (quoting *Sanden v. Mayo Clinic,* 495 F.2d 221, 226 (8th Cir.1974)).

 In rejecting Banghart's motion for new trial, the district court adopted the facts

at the present time. I will instruct you that these photos are photos of the canisters which were involved in the accident which is the subject of this litigation. It will be up to you to determine the date or other circumstances surrounding what they depict.
The only objections stated in Banghart's brief as to this instruction are that the trial court abdicated its responsibility of insuring an adequate foundation before giving the exhibits to the jury. However, we conclude that the date and other circumstances surrounding the taking of the photographs were properly left to the jury for consideration in evaluating the photographs.

4. Although Banghart's counsel objected because of Origo's failure to pinpoint the date on which the photographs were taken, during a discussion regarding the admissibility of the photos he stated: "I think these are our investigator's [photos]."

5. We frequently will not consider arguments asserted for the first time in reply briefs. Our consideration of the issue on the merits in this case should not be considered as precedent for doing so in future cases.

set out in the affidavit of Banghart's counsel's paralegal, Becky Cox. In her affidavit, Cox stated that she called each juror and three agreed to talk to her.[6] The three jurors Cox interviewed related that they found Dr. Hoffman's testimony to be credible, and disbelieved Origo's expert, Dr. Quest. The jurors told Cox that during deliberations all of the jurors participated in an experiment with the stove, in which matches were lit and dropped into the stove. The jurors were attempting to duplicate a portion of the testing Dr. Hoffman described in his testimony. One juror explained that the jurors first dropped toothpicks, as they had no matches, and later obtained wooden matches for the experiment. The jurors also stated that they failed to duplicate Dr. Hoffman's tests results, and that when the matches were lit and dropped into the stove, most remained upright on top of the stove contrary to Dr. Hoffman's testimony.

Based on Cox's affidavit, the district court found sufficient facts to assume: (1) the jurors conducted the test as described in the Cox Affidavit; (2) every member of the jury observed or participated in the test; and (3) the outcome of the test differed from Dr. Hoffman's testimony concerning the test he performed. We accept the districts court's findings with respect to the assumptions which may be drawn from the Cox affidavit. When we do so, we are convinced that the district court did not abuse its discretion in denying Banghart's motion for a new trial.

In a civil case, the exposure of jurors to materials not admitted into evidence mandates a new trial only upon a showing that the materials are prejudicial to the unsuccessful party. *Peterson ex. rel. Peterson v. General Motors Corp.*, 904 F.2d 436, 440 (8th Cir.1990); *Neville Constr. Co. v. Cook Paint & Varnish Co.*, 671 F.2d 1107, 1112 (8th Cir.1982) (citation omitted). Here, we need not consider whether Banghart was prejudiced by the admission of extraneous evidence, because neither the toothpicks and wooden matches,[7] nor the experiment conducted by the jurors constitute extraneous evidence.

Banghart introduced the stove involved in the fire as an exhibit at trial, and it was provided to the jury during its deliberations. The matches and toothpicks used in the testing were not evidence considered by the jurors in reaching their decision, but merely objects used in scrutinizing the physical nature of the piece of evidence upon which the case turned, the stove, and in evaluating the expert's testimony regarding his experiments with the stove.

This case is similar to *Taylor v. Reo Motors, Inc.*, 275 F.2d 699 (10th Cir.1960). In *Taylor,* the plaintiff alleged that the heat exchanger in a freight tractor was defective. *Id.* at 701. The jury dismantled and reassembled the heat exchanger using pocket knives, nail clippers and other pocket tools. *Id.* at 705. In doing so, the jury tested the validity of certain trial testimony. *Id.* In

---

**6.** Rule 606(b) of the Federal Rules of Evidence governs testimony of a juror with respect to the validity of a verdict. "[A] juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent or dissent from the verdict." Fed.R.Evid. 606(b). However, a juror may testify about whether "extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear on any juror." *Id.* An affidavit may not be received on anything from which a juror would be precluded from testifying. *Id.*

While Origo argues that Cox's inquiry was improper, it does not argue that the district court should not have accepted her affidavit. We are not asked to determine that the court erred in accepting the affidavit, and will not do so. Suffice it to say that Rule 606(b) establishes very

strict requirements for accepting testimony from jurors about their deliberations, and trial courts should be hesitant to accept such testimony without strict compliance with the rule. *See, e.g., United States v. Krall,* 835 F.2d 711, 715–16 (8th Cir.1987).

**7.** Banghart makes much of the fact that the district court specifically stated that a box of wooden matches that were used as demonstratives during trial would not accompany the jury to the jury room. The only significance we see in this statement is that the district court did not feel that the wooden matches had any bearing on the case. As we have said above, the wooden matches were simply objects used to evaluate the evidence in the case: the stove, and the expert's description of his experiments with the stove. The matches did not have any independent bearing on the case.

rejecting plaintiff's claim of jury misconduct, the court reasoned that "[i]f the experiment or demonstration was conducted by the jury for the purpose of testing the truth of the statements made concerning the functioning of the heat exchanger, it was proper." *Id.* In this case, as in *Taylor*, the jurors used objects which were not entered into evidence to test the validity of trial testimony.

Banghart makes no attempt to assert that any of the jurors considered the matches or toothpicks to have any independent bearing upon the outcome of the trial. *See United States v. Brewer*, 783 F.2d 841, 843 (9th Cir.), cert denied, 479 U.S. 831, 107 S.Ct. 118, 93 L.Ed.2d 64 (1986) (holding that a magnifying glass, which was not admitted into evidence but which the jurors used to examine photographic evidence, was not extrinsic evidence because no one asserted that "the jurors understood the magnifying glass itself to have any bearing on the case"). The jurors use of the matches and toothpicks were relevant to the deliberations only in the context of the jurors' examination of the stove. Thus, if the experiment itself did not result in the consideration of extrinsic evidence, neither did the jurors use of the matches and toothpicks.

The experiment did not result in juror consideration of extrinsic testimony. There had been extensive testimony regarding the experiment. In conducting the experiment the jurors were not exposed to extrinsic evidence, but merely tested the truth of statements made concerning the design of the stove. *Taylor*, 275 F.2d at 705. Thus, neither the wooden matches and toothpicks used in the experiment, nor the experiment itself were extrinsic evidence.

Banghart cites a number of cases to support his argument that the toothpicks and matches used by the jurors and the test conducted by the jurors resulted in juror consideration of improper extrinsic evidence. *United States v. Navarro–Garcia*, 926 F.2d 818, 820 (9th Cir.1991) (juror conducted out of court experiment in which she placed 300 pounds of weight in her car to see if it would affect how the car handled, then informed other jurors of the results); *In re Beverly Hills Fire Litigation*, 695 F.2d 207, 212–13 (6th Cir.1982) (juror conducted investigation of wiring in his home and conveyed information to other jurors), cert. denied, 461 U.S. 929, 103 S.Ct. 2090, 77 L.Ed.2d 300 (1983); *Stiles v. Lawrie*, 211 F.2d 188 (6th Cir.1954) (juror brought into jury room a state highway department manual containing information on braking distances).[8]

These cases are inapposite because each of them involved either: (1) a situation in which a jury conducted an experiment outside of the presence of the other jurors and reported the results to the other jurors, thus subjecting the other jurors to extrinsic testimony; or (2) a situation where the jurors considered physical evidence which was not admitted at trial. *See e.g., Stiles*, 211 F.2d at 189. Thus, the cases cited by Banghart involve juror consideration of plainly extrinsic evidence. In the present case, the alleged jury misconduct does not fall into either of these categories.

We agree with the district court's conclusion that, in the present case, "the test conducted by the jury was simply part of the process of evaluating the evidence introduced at trial by subjecting certain ... evidence to greater scrutiny." *Banghart v. Origoverken A.B.*, No. 3–91–441, slip op. at 9–10 (D.Minn. Oct. 1, 1993). Therefore, we hold that the district court did not abuse its discretion in ruling that Banghart was not entitled to a new trial on the basis of juror misconduct.

For the foregoing reasons, we affirm the judgment of the district court.

---

8. Another case which is somewhat factually similar to this case is *United States v. Beach*, 296 F.2d 153 (4th Cir.1961). In *Beach*, the court found juror misconduct where the jurors obtained an electrical drop cord from the court and conducted a noise test on adding machines which were admitted into evidence. *Id.* at 158. In *Beach*, there had been no trial testimony regarding such a noise test and therefore the experiment constituted juror consideration of extrinsic evidence. *Id.* Conversely, in this case, there had been extensive trial testimony regarding the experiment conducted by the jurors.