682 F.Supp.2d 978 (2008)
ORTHOARM, INC., Plaintiff,
v.
FORESTADENT USA, INC., et al., Defendants.
No. 4:06-CV-730 CAS.
United States District Court, E.D. Missouri, Eastern Division.
July 17, 2008.
*979 Named Expert: Michael Wessinger
Keith J. Grady, Graham L. W. Day, John M. Challis, Polsinelli & Shughart, PC, St. Louis, MO, for Plaintiffs.
*980 David W. Harlan, Jennifer E. Hoekel, Michael J. Hartley, Senniger & Powers, St. Louis, MO, Frederick L. Whitmer, John C. Ohman, Thelen, LLP, Lee A. Goldberg, Brown and Raysman, New York, NY, for Defendants.

MEMORANDUM AND ORDER
CHARLES A. SHAW, District Judge.
This matter is before the Court on the parties' motions in limine. This is a patent infringement action involving orthodontic brackets or braces. The patent at issue, U.S. Patent No. 5,630,715 ("the '715 Patent") describes an orthodontic bracket that incorporates within the bracket itself a mechanism, known as a clip or shutter, for closing the bracket. The clip or shutter is designed to retain what is known as the archwire. The archwire exerts force upon the teeth to move them into proper alignment. The brackets and wire combine to exert forces on the teeth to align the teeth. This type of bracket that incorporates a closing mechanism is known in the orthodontic field as a "self-ligating" bracket.
Plaintiff G.A.C. International, Inc. ("GAC") sells a self-ligating bracket to orthodontists under the name In-Ovation®. The In-Ovation® bracket is covered by the '715 Patent, and GAC has an exclusive license to sell this product. Defendant Forestadent USA, Inc. developed a selfligating bracket which it began selling in the United States under the name "Quick® Selfligating Brackets" in 2006. Defendant Dyna Flex, Ltd. sells the Quick® Selfligating Bracket under the name "Dynaflex Self-Ligating Extreme (SLX)" bracket.[1] GAC and Orthoarm, the owner of the '715 Patent, filed this action against the defendants, alleging that the Quick Bracket products infringe at least Claims 1, 3 and 12 of the '715 Patent.
Forestadent USA, Inc. and Dyna Flex, Ltd. (collectively "defendants"), have filed motions in limine seeking to: (1) exclude admission of plaintiffs' In-Ovation® bracket into evidence, and (2) preclude plaintiffs from arguing infringement by the doctrine of equivalents. The plaintiffs, Orthoarm, Inc. and G.A.C. International, Inc. (collectively "plaintiffs"), have filed five motions in limine seeking to: (1) prevent undisclosed expert or opinion testimony; (2) exclude expert or opinion testimony of Michael Wessinger; (3) prevent the defendants from varying from the Court's claim construction order regard U.S. Patent No. 5,630,715; (4) prevent the introduction of photographs produced at the deposition of Michael Wessinger and CAD drawings; and (5) prevent the defendants from using at trial defendants' proposed Exhibits M and AAA-KKK. The Court will address each motion in turn.

A. Defendants' Motions in Limine.

1. Defendants' Motion in Limine to Exclude In-Ovation® Commercial Embodiments.

The defendants seek to preclude plaintiffs from offering into evidence any commercial embodiments of the plaintiffs' In-Ovation® bracket, on the basis that any such evidence would result in improper comparison between the products and jury confusion in violation of Rule 403 of the Federal Rules of Evidence. Plaintiffs state that because the relevant terms of the '715 Patent have been construed by stipulation of the parties and Order of this Court, "what remains is for the jury to determine whether the Quick® Bracket infringes each element of claims 1, 3 and *981 12 of the patent-in-suit in light of the language of those claims as properly construed." Mot. in Limine at 1 (Doc. 132).
The defendants contend that the structure or design of any dental brackets sold or manufactured by plaintiffs is irrelevant, including any brackets plaintiffs contend embody the invention disclosed by the '715 Patent. Defendants assert that commercial embodiments should be excluded because, such evidence would "likely lead to impermissible and confusing comparisons between the accused infringing product and the patentee's alleged commercial embodiment." Id. Defendants cite, inter alia, Zenith Labs., Inc. v. Bristol-Myers Squibb Co., 19 F.3d 1418, 1423 (Fed.Cir.1994) (holding that "it is error for a court to compare in its infringement analysis the accused product or process with the patentee's commercial embodiment or other version of the product or process; the only proper comparison is with the claims of the patent.").
The plaintiffs respond that evidence relating to the In-Ovation® bracket and its structure and operation is directly relevant to plaintiffs' claim of willful infringement. Plaintiffs state the Federal Circuit has held that one of the relevant factors in a claim of willful infringement is "whether the infringer deliberately copied the ideas or design of another," citing Stryker Corp. v. Intermedics Orthopedics, Inc., 96 F.3d 1409, 1414 (Fed.Cir.1996) (quoting Read Corp. v. Portec, Inc., 970 F.2d 816, 827 (Fed.Cir.1992)).
In the exercise of its discretion, the Court will grant defendants' motion and exclude the In-Ovation® bracket from evidence. Infringement is to be determined by comparing the asserted claims to the accused device, and not by comparing the accused device to a preferred or commercial embodiment of the patentee's claimed invention. Martin v. Barber, 755 F.2d 1564, 1567 (Fed.Cir.1985). The Court recognizes that at least two unpublished Federal Circuit cases have held district courts did not abuse their discretion by allowing a commercial embodiment to be used as a demonstrative device during opening statements or admitted into evidence as relevant to a charge of willful infringement and copying. See, e.g., Viam Mfg., Inc. v. Iowa Export-Import Trading Co., 243 F.3d 558 (Fed.Cir.2000) (unpublished); Riggs Mktg., Inc. v. Mitchell, 194 F.3d 1338 (Fed.Cir.1999) (unpublished). Nonetheless, the Court believes that allowing admission of the commercial embodiment in this case creates too great a potential for jury confusion and improper comparison between the commercial embodiment and the accused device.

2. Defendants' Motion in Limine to Preclude Plaintiffs from Arguing Infringement by the Doctrine of Equivalents.

The defendants move to preclude the plaintiffs from arguing to the jury or presenting evidence in support of the contention that the Quick Bracket infringes the '715 Patent through the doctrine of equivalents, on the ground that plaintiffs have waived any such contention or argument by failing to raise it at any point prior to trial. Defendants state that plaintiffs have proceeded throughout the case on the theory that the defendants' alleged infringement of the '715 Patent is literal, i.e., that the accused device infringes each and every element of claims 1, 3 and 12 as written and as construed by the Court in its Order regarding claim construction. The defendants assert that because plaintiffs have failed to raise any issue of infringement under the doctrine of equivalents, they have waived the right to argue, or to have their experts opine on, any theory of infringement under the doctrine of equivalents. The defendants do note that plaintiffs' experts have referred to "equivalents" in connection with the separate *982 issue of means-plus-function limitations.
The plaintiffs respond that they are proceeding on a theory of literal infringement and have not articulated a theory of infringement under the doctrine of equivalents. Plaintiffs state that they have, however, repeatedly stated that the Quick Bracket device infringes certain meansplus-function limitations of claims 1, 3 and 12 of the '715 Patent because the structures in the Quick Bracket are identical or equivalent to the structures identified in the patent. Plaintiffs state that they will argue at trial and present evidence that the Quick Bracket meets the means-plusfunction limitation of claims 1, 3 and 12, and do not view defendants' motion in limine as an attempt to preclude plaintiffs from making this type of equivalents argument. Defendants did not file a reply memorandum.
The Court agrees that defendants' motion only seeks to preclude plaintiffs from attempting to proceed on a theory of infringement under the doctrine of equivalents. Because plaintiffs have represented that they do not intend to proceed on a theory of infringement under the doctrine of equivalents, the motion should be granted to that limited extent. The Court does not interpret the motion as seeking to preclude the plaintiffs from argument and presenting evidence that the Quick Bracket device infringes certain means-plusfunction limitations of claims 1, 3 and 12 of the '715 Patent because the structures in the Quick Bracket are identical or equivalent to the structures identified in the patent.

B. Plaintiffs' Motions in Limine.

1. Plaintiffs' First Motion in Limine to Prevent Undisclosed Expert or Opinion Testimony.

In this motion, plaintiffs request the Court to issue an order precluding the defendants from introducing into evidence, referencing or relying upon any previously undisclosed expert or opinion testimony. Plaintiffs do not identify any particular witness or testimony in their motion.
Defendants respond that the motion should be denied because they do not intend to proffer at trial any expert or opinion testimony that was neither (1) previously disclosed in this case pursuant to Rule 26 of the Federal Rules of Civil Procedure or the rules of this Court, nor (2) otherwise ruled admissible by the Court's Memorandum and Order, dated December 14, 2007, 2007 WL 4457409, denying, in part, plaintiffs' motions to strike declarations previously submitted by certain Forestadent witnesses.
The Court will deny this motion without prejudice.

2. Plaintiffs' Second Motion in Limine to Exclude Expert or Opinion Testimony of Michael Wessinger.

Plaintiffs move to prevent defendants from offering at trial any expert or opinion testimony of Michael Wessinger pursuant to Rule 26, Fed.R.Civ.P. and this Court's Orders or, in the alternative, to limit Mr. Wessinger's opinion testimony to that which is disclosed in his October 5, 2007 Declaration. Plaintiffs state that Mr. Wessinger's opinion testimony was not disclosed in accordance with the applicable Case Management Order, that defendants can provide no substantial justification for their failure to designate him as an expert witness, and that this failure is not harmless because Mr. Wessinger was disclosed months after the expert disclosure deadline and never provided written report containing all of this opinions.
The defendants respond that this motion seeks to revisit an issue the Court has *983 already considered and decided. Specifically, defendants state that by Memorandum and Order of December 14, 2007, the Court denied plaintiffs' motion to strike the Declaration of Michael Wessinger and granted plaintiffs additional time to disclose a rebuttal expert witness, in part because it found that plaintiffs were aware in August 2007, prior to filing their summary judgment motion, that Mr. Wessinger's testimony directly conflicted with that of defendants' Rule 30(b)(6) representative. See Mem. and Order of Dec. 14, 2007 at 6 (Doc. 109). Defendants state that plaintiffs submitted a rebuttal report from their previously disclosed expert, Dr. Laurence Jerrold, which addressed the Wessinger Declaration, and also engaged Dr. Robert Sturges as a rebuttal expert, and submitted a report from him which addressed the Wessinger Declaration. Defendants state that plaintiffs did not ask the Court to reconsider its ruling of December 14, 2007, and have submitted rebuttal expert testimony, and so cannot now complain about the prospect of facing Mr. Wessinger's testimony at trial.
The defendants state that any suggestion of prejudice to the plaintiffs has been cured by the opportunity granted to them to proffer rebuttal evidence to the Wessinger Declaration. The defendants also state that if the motion were to be granted, they would suffer prejudice, because plaintiffs have agreed that Mr. Wessinger is a person "of ordinary skill" in the relevant art, Plaintiffs' Revised Jury Instruction at 44, and therefore have already agreed that Mr. Wessinger is able to provide probative and relevant testimony in this case. Defendants state that this is particularly true given that Mr. Wessinger will testify about, among other things, the origin, design and function of the Quick Bracket.
Plaintiffs reply that they are not attempting to relitigate the previously-filed motion to strike the Wessinger Declaration, but rather are presenting the new and separate issue of whether Mr. Wessinger should be permitted to provide opinion testimony at trial given that he was not disclosed in accordance with the Case Management Order. Plaintiffs assert that they suffered "extreme prejudice" as a result of the belated expert disclosure because (1) they were not provided an opportunity to supplement the summary judgment record with testimony from their rebuttal witnesses, and (2) they were not aware when they took Mr. Wessinger's deposition that defendants would be providing an expert declaration from him regarding infringement issues, and did not learn all of Mr. Wessinger's opinions until October 10, 2007, after discovery had closed in the case. Thus, plaintiffs assert that because of the belated disclosure, they were required to file a motion to strike the Wessinger Declaration, retain rebuttal experts and disclose their reports and make them available for deposition, and travel to Germany a second time to redepose Mr. Wessinger about the opinions contained in the belatedly disclosed declaration. Plaintiffs assert that in the alternative, defendants should only be able to present Mr. Wessinger's expert testimony as contained in his Declaration of October 5, 2007.
Plaintiffs also state that nothing in their motion would preclude Mr. Wessinger from testimony regarding the conception and design of the Quick Bracket and the way it works. Rather, plaintiffs state that they simply seek to preclude Mr. Wessinger from giving expert opinion testimony in support of defendants' claim of non-infringement by comparing how he contends the Quick Bracket works to the claims of the '715 patent as construed by the Court, and by comparing the Quick Bracket to the prior art.
The Court addressed the issue of defendants' failure to disclose Mr. Wessinger *984 in compliance with the Case Management Order in the Memorandum and Order of December 14, 2007. For the reasons stated in the Memorandum and Order, the Court permitted defendants to disclose Mr. Wessinger out of time, and granted plaintiffs the opportunity to provide rebuttal experts in order to cure any prejudice. Having resolved the issue in this manner, the Court finds it is not appropriate to exclude Mr. Wessinger's opinion testimony at trial or to limit his testimony to the Declaration.
Although plaintiffs were put to the additional expense of traveling to Germany a second time to depose Mr. Wessinger, this does not present a current hindrance to the plaintiffs' case. Further, plaintiffs did not bring the issue of having to take a second deposition out of the country to the Court's attention prior to the deposition, and therefore allowed the opportunity for the Court to address the issue to pass. For example, plaintiffs could have asked that defendants be ordered to produce Mr. Wessinger for deposition in the United States, or that defendants bear some of the fees and costs incurred by plaintiffs in connection with the second deposition. In sum, plaintiffs may have incurred additional expenses because of defendants' late disclosure, but plaintiffs had an opportunity to mitigate these expenses. Having had the opportunity to take Mr. Wessinger's expert deposition and present rebuttal experts, plaintiffs cannot show how they are presently unduly prejudiced by the inclusion of Mr. Wessinger's expert testimony. This motion should therefore be denied.

3. Plaintiffs' Third Motion in Limine to Prevent Defendants from Varying From the Court's Claim Construction Order Regarding U.S. Patent No. 5,630,715.

Plaintiffs move to prevent defendants from introducing evidence at trial that varies from the Court's Memorandum and Order on Claim Construction Regarding U.S. Patent No. 5,630.715. Plaintiffs assert that they anticipate defendants will proffer testimony that varies from the Court's construction of certain patent terms and phrases, including "locking shutter," "locking recess," and "locking body for engaging said locking recess." In particular, plaintiffs state that defendants have repeatedly argued that the locking recess is a "structure" designed to "hold the clip in place," despite the fact that neither the claims nor the Court's claim construction ruling requires such a structure or function. Plaintiffs state that claim construction is a matter of law reserved exclusively for the Court, and that it must instruct the jury on the meanings to be attributed to all disputed terms used in the claims. Thus, plaintiffs assert that to allow defendants to proffer testimony or make arguments that vary from the Claim Construction Order would invade the province of the Court and confuse the jury.
The defendants respond that plaintiffs' motion, although "purportedly designed to safeguard the Court's ruling on claim construction," actually seeks to preclude evidence relevant to the fundamental issue of how the accused device is designed and functions. Defendants state that they have no intention of deviating from the operative claim construction rulings, but must be able to present evidence essential to the jury's determination as to whether the Quick Bracket reads on the elements of the '715 Patent, as those claims have been construed. Specifically, defendants state that it is for the jury to determine whether the Quick Bracket has a "locking shutter," "locking recess," "locking body" or any of the other structures identified in the '715 Patent, and that to do so, the jury must understand the Quick Bracket.
Claim construction is an issue of law for the Court. Markman v. Westview Instruments, Inc., 52 F.3d 967, 970-71 *985 (Fed.Cir.1995) (en banc), aff'd, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). Comparison of the properly construed claims to the allegedly infringing device "requires a determination that every claim limitation or its equivalent be found in the accused device." Pickholtz v. Rainbow Techs., Inc., 284 F.3d 1365, 1371 (Fed.Cir.2002). The determination of whether an accused device infringes the patent-in-suit is a question of fact. Id.
Plaintiffs are correct that the jury cannot be encouraged to depart from the Court's claim construction. The parties agree that the evidence presented at trial must be consistent with the Court's Claim Construction Order. How the defendants would have construed the claims is irrelevant to the issues now before the jury for trial, and the Court will not permit argument or evidence reflecting a claim construction other than the Court's May 24, 2007 Claim Construction Order, 502 F.Supp.2d 968 (E.D.Mo.2007).
In claim construction briefing, defendants urged the Court to construe the term "locking recess" as a "definite and pronounced structure, consisting of an indentation or depression whose purpose is to complete locking the structure in place in a corresponding structure when in the closed position. The indentation that comprises the locking recess must be a structure separate and independent from the archwire slot." Defs.' Opening Brief on Claim Construction at 10 (Doc. 47) (emphasis added). The Court rejected this construction and instead construed "locking recess" as "an indentation or small hollow that permits engagement by the locking body." Claim Construction Order, 502 F.Supp.2d at 979 (Doc. 59).
Plaintiffs' motion in limine will be granted to the extent that defendants will not be permitted to argue or present evidence that the locking recess is a "structure" designed to "hold the clip in place." The Court will not decide any other issues on this motion in limine, because no other issues have been sufficiently defined at this point.[2] Nothing in this ruling will prevent defendants from presenting evidence that is relevant to issues other than claim construction. As another district judge in this Circuit has observed, "Some flexibility at trial will no doubt arise with regard to each party's evidence as to their understanding and actions, and evidentiary judgments will need to be made when such evidence appears to directly clash with the claim construction." Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V., 2004 WL 5508752, *5 (S.D.Iowa Sept. 9, 2004). In addition, because some of defendants' witnesses are native German speakers who will testify through interpreters, issues of word selection in the German-to-English translations may arise. Ultimately, however, all evidence and argument must conform to the Court's instructions to the jury.

4. Plaintiffs' Fourth Motion in Limine to Prevent Introduction of Photographs Produced at the Deposition of Michael Wessinger (Defendants' Proposed Trial Exhibit CC) and CAD Drawings (Defendants' Proposed Trial Exhibits Q-W).

Plaintiffs move to prevent defendants from offering at trial certain photographs *986 produced for the first time at the deposition of Michael Wessinger on January 16, 2008 (Defs.' Trial Ex. CC), and computer aided design ("CAD") drawings described by defendants' Rule 30(b)(6) designee, Stefan Foerster, at his deposition on May 17, 2007 (Defs.' Trial Exs. Q-W). The Court will address the two categories of exhibits separately.

a. Photographs

Plaintiffs assert that the photographs are inadmissible and should be excluded because there is no basis to establish their authenticity. Plaintiffs state that defendants' witness Mr. Wessinger did not know who created the photographs other than "one of the ladies of our quality safety," and could not determine if the brackets depicted in the photographs were part of the same production run, while witness Mr. Wagner did not know when the photographs were created, had no involvement with their creation, and admitted that they could have been created on different months, days or years, showed different production runs, and were created at sporadic intervals. Plaintiffs also assert that the photographs were not produced until well after the close of discovery in August 2007, at the second deposition of Mr. Wessinger in January 2008, which was then six weeks prior to trial.
Defendants respond that they have established a prima facie case for authenticity of the photographs based on the deposition testimony of Messrs. Wessinger and Wagner. Defendants state that in response to questioning, Mr. Wessinger identified a photograph as that of a Quick Bracket, testified that the photographs were taken in connection with Forestadent's quality control measure, and were taken by "a Leica microscope with a photographic photo camera." Wessinger Dep. 107:21-8, Jan. 16, 2008. Mr. Wagner testified that the photographs were stored and located in Forestadent's picture database, were taken during the course of the quality control process, and were taken by use of a microscope. Defendants assert that the Eighth Circuit has repeatedly held that even testimony ambiguous as to time and place of a photograph may be sufficient for a finding of authenticity, citing United States v. Englebrecht, 917 F.2d 376, 378 (8th Cir.1990).
Defendants also state that plaintiffs are incorrect in suggesting that authenticity of the photographs and CAD drawings must be established before trial. Defendants assert that they must be afforded a full and fair opportunity to authenticate the photographs and CAD drawings at trial. Finally, defendants state that plaintiffs were afforded the opportunity to inspect, study and analyze the photographs, and could have deposed "any number of individuals" about them, but chose not to do so. Defendants state that plaintiffs have not even attempted to demonstrate prejudice based on the complained-of delay in producing the photographs, and therefore no basis exists for the harsh remedy of exclusion.[3]
Federal Rule of Evidence 901 states that the "requirement of authentication... is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed.R.Evid. 901(a). In Banghart v. Origoverken, A.B., 49 F.3d 1302, 1304-05 (8th Cir.1995), the Eighth Circuit rejected the argument that photographs of fuel canisters of a stove that had exploded should *987 not have been admitted because of the defendant's failure to establish when or by whom the photographs were taken.[4] The Court stated that the defendant had "provided a rational basis for the jury to conclude that the photographs were what [defendant] asserted they were." Id. at 1305. Thus, there is no bright-line rule requiring that all photographs be authenticated by identifying exactly who took them and when they were taken.
The Court agrees with defendants that plaintiffs' motion to exclude the photographs is premature. The Court will decide admissibility based on the foundation that defendants lay at trial. Further, the Court finds that defendants have made a prima facie case that they will likely be able to authenticate the photographs at trial. With respect to the delay in production, although the photographs were produced six weeks before the then-scheduled trial date, the trial was continued twice at the request of counsel and is now set for August 18, 2008. Plaintiffs have had months to examine the photographs and conduct any desired discovery concerning them. The Court finds that plaintiffs have not established substantial prejudice to warrant the remedy of excluding the photographs. Plaintiffs' fourth motion in limine should be denied with respect to the photographs, Defendants' Trial Exhibit CC.

b. CAD drawings

Plaintiffs assert that the CAD drawings are inadmissible because they do not accurately depict defendants' product and were prepared solely for purposes of this litigation to emphasize certain aspects of defendant's product. Plaintiffs state that defendants' witness Stefan Foerster testified that engineer Carsten Wagner produced the CAD drawings at his direction and the direction of Rolf Foerster for this lawsuit, and acknowledged that the CAD drawings were derived from the production drawings used by engineers to produce the product, but were revised with color markings to make the pictures more "interpretable." Foerster Dep. 59:10-14. Plaintiffs assert that color markings were added "for the apparent purpose of emphasizing certain aspects of the drawings over others." Pls.' Fourth Mot. in Limine at 4.
Defendants respond that the CAD drawings are accurate depictions of the Quick Bracket, as shown by the testimony. Defendants state that Stefan Foerster testified the CAD drawing are mirrored reflections of the Quick Bracket and are unchanged from the production drawings used by the engineers in manufacturing the Quick Bracket, except that color markings were added. Mr. Foerster testified that the CAD drawings were created by Mr. Wagner, an engineer, using a computer aided design program called Auto Cad, at Mr. Foerster's direction and request. Mr. Foerster testified that while the CAD drawings were created for purposes of this suit, they were taken from the original production drawings, and drawings of this nature are regularly used by engineers in the course of production of the Quick Bracket product. Foerster Dep. 59:6-60:4.
Defendants state that plaintiffs have not identified any inaccuracies in the CAD drawings and have described no potential for confusion that they occasion. Defendants *988 state that the CAD drawings are demonstrative evidence, highlighted in a manner to ease the jury's confusion regarding "this dense area of technical expertise," and that plaintiffs will have "a full and fair opportunity to disparage the CAD Drawings as they wish and proffer their own iterations." Defs.' Opp. at 9.
The Court will deny plaintiffs' fourth motion in limine with respect to the CAD drawings, Defendants' Trial Exhibits Q-W. The fact that these drawings were prepared in anticipation of litigation is not a basis for their exclusion. Plaintiffs have not articulated in what manner the CAD drawings are inaccurate. It appears to the Court from the record before it that the CAD drawings are accurate representations of the Quick Bracket, with color added to certain parts of the bracket. Although plaintiffs argue that the added color is intended to emphasize one part of the bracket over another, the Court cannot say at this juncture that such an intent, if this is indeed the defendants' intent, renders the CAD drawings inadmissible. Plaintiffs are free to challenge admission of the CAD drawings at trial and, if they are admitted, to vigorously cross-examine the witnesses about them and argue their faults and inaccuracies to the jury.

5. Plaintiffs' Fifth Motion in Limine to Prevent Defendants From Using at Trial Defendants' Proposed Exhibits C-M and AAA-KKK.

Plaintiffs move in limine to prevent defendants from using at trial Defendants' Exhibits C-M and AAA-KKK. Exhibits C-M are 10:1 ratio plastic models of the Quick Bracket, one of which is an accurate model of the accused device (the "original"), and the rest are modified with different portions of the bracket cut away.[5] Exhibits AAA-KKK are photographs of the original and modified Quick Bracket models, labeled to indicate the view or the modification and view, e.g., "originalview from distal" (Defs.' Ex. CCC); "without gingival slotwallview from distal" (Defs.' Ex. DDD), or "no tie wings at all`isometric' view." (Defs.' Ex. HHH).
Plaintiffs contend that the modified models and photographs thereof are of essentially no probative value, but will create undue confusion in the jury's mind and should therefore be excluded. Plaintiffs assert that:
the alterations to the Quick Bracket Model appear to be designed to show that the "clip" of the Quick Bracket remains "held in place" even in the absence of the gingival tie wings. It appears that Defendants may attempt to use these exhibits to confuse the jury by arguing that the locking recess required by U.S. Patent No. 5,630,715, is a "structure" designed to "hold the clip in place" and that the Quick Bracket has no such structure because, instead, "it is the shape of the clip as it wraps around the structure that we sometimes call a `cliff that holds the clip in place over the archwire." [Wessinger Decl. at ¶ 10.] *989 Pls.' Fifth Mot. in Limine at 2, ¶ 6. Plaintiffs contend that such an argument is a fundamental misrepresentation of the Court's Claim Construction Order, which does not require that there be a "structure" to "hold the clip in place." Plaintiffs argue that the modified models, which they believe are designed to show that the Quick Bracket has no "structure" in the labial face of its tie wings designed to "hold the clip in place," can only confuse the issues and mislead the jury. Plaintiffs add that the modified models cannot provide any relevant insight into how the actual Quick Bracket functions, because the Quick Bracket is designed to retain an archwire in the archwire slot, and the modified models could not perform this function because a portion of the slot wall has been removed.
Plaintiffs also assert that because of the number of exhibits that are modified models or photographs of modified models, in contrast to the one exhibit that involves the original accused device (Defs.' Ex. A), it appears that defendants will attempt to place great emphasis on the modified models at trial, causing the jury to believe it should base its decision on the modified models and not the actual accused device.
Finally, plaintiffs assert that the modified models should be excluded under Rule 37(c)(1) because the defendants never disclosed their existence during discovery and plaintiffs were unaware defendants intended to use them at trial until defendants submitted their exhibit list. As a result, plaintiffs state they have had no opportunity to investigate how the models were modified or to determine how defendants' witnesses will testify regarding the models, and it would be manifestly unfair to allow defendants to belatedly disclose the modified models and use them at trial.
Defendants respond that the exhibits show the Quick Bracket from varying perspectives and angles, and that in order to achieve the varying perspectives, it was necessary to remove particular components, such as the gingival slot walls and the tie wings, in order to view the otherwise "imperceptible" parts of the Quick Bracket. Defendants assert that such modifications are permissible and do not compromise the admissibility of the exhibits as demonstrative exhibits to assist the jury to better understand the mechanics of the device at issue. Defendants state that the modified models "highlight pertinent features and functions of the accused Quick Bracket in a manner designed to make as clear as possible to the jury how the accused device works and why Forestadent should not be found liable for infringement." Defs.' Mem. Opp. at 5.
Defendants assert that plaintiffs' objection to the models is essentially that they have been oversimplified, not that they are' misrepresentations of the device, and state that such an objection is properly rejected, citing Young Dental Manufacturing Co. Inc. v. Q3 Special Products, Inc., 112 F.3d 1137 (Fed.Cir.1997). Defendants state that to the extent plaintiffs take issue with the exhibits, the proper remedy is not exclusion, but rather the opportunity for vigorous cross examination and argument, citing Hart v. Grim, 179 F.2d 334 (8th Cir.1950).
Defendants state that their inadvertent failure to disclose the existence of the exhibits during discovery does not warrant exclusion, because plaintiffs have failed to demonstrate prejudice of a nature sufficient to warrant exclusion. Defendants state that the "real underpinning of Plaintiffs' prejudice claim is that the delay deprived Plaintiffs of the opportunity to gain access to Forestadent's trial strategy." Defs.' Mem. Opp. at 9. Defendants also state that plaintiffs were made aware of the exhibits on February 8, 2008. Thus, *990 defendants assert that plaintiffs have had ample opportunity to investigate the nature of the exhibits, and have not identified what steps they would otherwise have taken had they been afforded greater notice of the exhibits. Finally, defendants contend that the substance of the exhibits is not new and constitutes no unfair surprise, and that they are merely tools to aid the jury in examining the Quick Brackets.
Defendants further respond that although the plaintiffs assert that they seek to exclude the exhibits to avoid jury confusion, plaintiffs' argument is not based on the fear of confusing the jury as to the nature of the Quick Bracket, but rather is based on plaintiffs' anticipation of the arguments defendants will make using the exhibits. Defendants contend that such speculation is not a valid basis for the exclusion of probative evidence. Defendants also note that the plaintiffs used both models and photographs of the Quick Bracket in the course of deposing several of defendants' witnesses, and should not now be able to complaint about their use at trial.
Plaintiffs reply that removing entire parts of the Quick Bracket models can tell the jury nothing about the manner in which the Quick Bracket is actually structured or the manner in which it functions, and can only confuse the jury. Plaintiffs object that the defendants have eliminated entire structural components in the models at issue, creating an inaccurate and entirely misleading depiction of the Quick Bracket. Plaintiffs contend that Young Dental is distinguishable for two reasons. First, the model at issue concerned an embodiment from a prior art patent, not the accused product, and as a result it was not as important for the prior art model to be as precisely constructed as in this case, where the jury must compare the actual structure and operation of the Quick Bracket to the asserted claims of the '715 Patent to determine infringement. Second, unlike Young, the modified models here are not mere non-working "oversimplifications," but rather lack entire structural components of the Quick Bracket to the point that they can no longer be said to be actual models of a Quick Bracket.
Plaintiffs further reply that they are prejudiced by the late disclosure of the modified models because they have had no opportunity to take any discovery concerning them. Plaintiffs state that although the trial was continued to August 2008, the continuance did not reopen the discovery period to permit plaintiffs to depose defendants' witnesses as to the manner in which the Quick Bracket models were modified, determine which of defendants' witnesses plan to testify regarding the modified models, or determine how defendants' witnesses will testify regarding the modified models. Plaintiffs state they should not be required to conduct another round of depositions because defendants failed to comply with their discovery obligations, and urge that the modified models be excluded based on belated disclosure.
In Young Dental, the Federal Circuit explained when demonstrative evidence may be excluded:
Demonstrative evidence such as the [prior art] model may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Fed.R.Evid. 403. Such a determination is within the trial court's considerable discretion. Westcott v. Crinklaw, 68 F.3d 1073, 1077 (8th Cir.1995).
Young Dental, 112 F.3d at 1146.
In Young Dental, the Federal Circuit considered the propriety of admitting a *991 model depicting a preferred embodiment from a prior art patent, in a case concerning infringement of a dental prophy angle. The plaintiff moved at trial for exclusion of the model on the grounds that it was incomplete and therefore misleading, arguing that it lacked many parts necessary for its operation. Id. at 1145. The Federal Circuit stated that the model was properly admitted because it did not misrepresent the "embodiment in any way other than oversimplifying it," id. at 1146, and therefore did not violate Rule 403.
The Court must determine whether the probative value of the modified models is substantially outweighed by the danger of confusing and misleading the jury. The parties agree that the 10:1 model is an accurate representation of the Quick Bracket. The photographs of the modified models appear to reflect that while parts of the 10:1 models have been cut away, the models have not otherwise been changed. A cut-away or sectional view of the model is not inherently confusing or misleading, and may be useful in illustrating and making more obvious to the jury the features and aspects of the Quick Bracket.[6] Based on Young Dental, the Court concludes that the modified models need not be excluded unless they misrepresent the Quick Bracket, and that plaintiffs' objections as presented in the fifth motion in limine are best addressed through vigorous cross examination.
The Court has ruled that defendants may not present argument or evidence reflecting a claim construction other than as contained in the Court's May 24, 2007 Claim Construction Order, and granted plaintiffs' Third Motion in Limine to the extent that defendants will not be permitted to argue or present evidence that the locking recess is a "structure" designed to "hold the clip in place." The Court cannot determine whether other testimony or argument concerning the modified models is misleading or confusing until the defendants actually offer such testimony or argument. Plaintiffs have not established that the probative value of the modified models is substantially outweighed by the danger of confusing and misleading the jury. Further, any prejudicial effect of admitting the evidence should be effectively minimized by giving the jury an appropriate limiting instruction. See, e.g., United States v. Thomas, 398 F.3d 1058, 1063 (8th Cir.2005) (limiting instructions decrease danger of unfair prejudice).
Finally, with respect to the issue of late disclosure, plaintiffs have not cited authority to establish that demonstrative evidence is required to be disclosed during the pretrial discovery process. Plaintiffs' fifth motion in limine will be denied without prejudice.
Accordingly, for the foregoing reasons,
IT IS HEREBY ORDERED that Defendants' Motion in Limine to Exclude In-Ovation® Commercial Embodiments is GRANTED. [Doc. 132]
IT IS FURTHER ORDERED that defendants' Motion in Limine to Preclude Plaintiffs from Arguing Infringement by the Doctrine of Equivalents is GRANTED to the extent that plaintiffs may not attempt to proceed on a theory of infringement under the doctrine of equivalents. [Doc. 133] Plaintiffs are not precluded from arguing and presenting evidence that the Quick Bracket device infringes certain *992 means-plus-function limitations of claims 1, 3 and 12 of the '715 Patent because the structures in the Quick Bracket are identical or equivalent to the structures identified in the patent.
IT IS FURTHER ORDERED that plaintiffs' First Motion in Limine to Prevent Undisclosed Expert or Opinion Testimony is DENIED without prejudice. [Doc. 135]
IT IS FURTHER ORDERED that Plaintiffs' Second Motion in Limine to Exclude Expert or Opinion Testimony of Michael Wessinger is DENIED. [Doc. 136]
IT IS FURTHER ORDERED that Plaintiffs' Third Motion in Limine to Prevent Defendants from Varying From the Court's Claim Construction Order Regarding U.S. Patent No. 5,630,715 is GRANED to the extent that defendants will not be permitted to argue or present evidence that the locking recess is a "structure" designed to "hold the clip in place." Nothing in this ruling will prevent defendants, from presenting evidence that is relevant to issues other than claim construction.
IT IS FURTHER ORDERED that Plaintiffs' Fourth Motion in Limine to Prevent Introduction of Photographs Produced at the Deposition of Michael Wessinger (Defendants' Proposed Trial Exhibit CC) and CAD Drawings (Defendants' Proposed Trial Exhibits Q-W) is DNIED. [Doc. 138].
IT IS FURTHER ORDERED that Plaintiffs' Fifth Motion in Limine to Prevent Defendants From Using at Trial Defendants' Proposed Exhibits C-M and AAA-KKK is DENIED without prejudice. [Doc. 139]
NOTES
[1] The Court refers to the Quick® Selfligating Bracket and Dynaflex Self-Ligating Extreme (SLX) bracket, collectively, as the "Quick Bracket."
[2] The statement in Mr. Wessinger's Declaration that "nothing in the Forestadent Quick-Bracket fits into or comes together with any structure of the Quick-Bracket to hold the clip in place in the closed position to hold the archwire in place," Wessinger Decl. at 14 (emphasis added), closely tracks defendants' claim construction arguments which were rejected by the Court. While defendants' witnesses may testify about the features and properties of the Quick Bracket, they may not add limitations into the claim as construed by the Court.
[3] The Court notes that defendants incorrectly state in their response that plaintiffs had the photographs "in hand" by August 22, 2007. Plaintiffs have asserted they did not receive the photographs until the second deposition of Mr. Wessinger in January 2008. For purposes of this opinion, the Court accepts that plaintiffs received the photographs in January 2008.
[4] The defendant in Banghart had claimed only that the photographs depicted the fuel canisters and were taken at some time after the accident. The record indicated that the photographs originated from one of three sources: a passenger on the boat who took photographs immediately after the accident, an investigator for the property insurer who took the photographs one month after the accident, or plaintiff's investigator, who took the photographs six months after the accident. The plaintiff stipulated that the photographs depicted the stove in question. Banghart, 49 F.3d at 1304-05.
[5] The parties provided the Court with one of the unmodified 10:1 plastic models for its use in connection with plaintiffs' motion for summary judgment. The brackets themselves are tiny and would be extremely difficult to view and evaluate in actual size. As noted earlier, the photographs of the actual brackets were taken with a camera and microscope.

The parties have differed in their description of the changes made to the models. Defendants describe the models as "modified," while plaintiffs describe them as "altered." The dictionary defines "modified" as "changed in form or character: altered," and defines "altered" as "made different: modified." See Webster's II New Riverside University Dictionary 762, 96 (1988). This is a distinction without a difference.
[6] The Court notes that the '715 Patent shows numerous views and perspectives of the bracket, including sectional views which illustrate various aspects and embodiments of the invention. See Pls.' Markman Brief (Doc. 40), Ex. 1 at 2-9. The purpose of the views and perspectives as contained in the patent is to illustrate and make more obvious various features and aspects of the invention.